**Sol A. DANN et al., Plaintiffs,**

**v.**

**CHRYSLER CORPORATION et al.,
Defendants.**

**Mary L. GALLO and A. James Gallo,
Plaintiffs,**

**v.**

**Paul C. ACKERMAN et al., Defendants.**

Court of Chancery of Delaware.

New Castle.

Dec. 8, 1965.

On Motion for Reargument Dec. 22, 1965.

Januar D. Bove, Jr., and Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, and Frank Rosenbaum, of Dann, Rosenbaum, Bloom & Kaufman, Detroit, Mich., for Dann, Rosenbaum, Bloom & Kaufman, petitioners herein.

Howard M. Handelman, of Bayard, Brill, Russell & Handelman, Wilmington, and Norman Annenberg, New York City, for objector, Erwin H. Ezzes.

Irving Morris and Joseph A. Rosenthal, of Cohen, Morris & Rosenthal, Wilmington, for objectants, Judson, Cassady, Seeman and Sandler.

Frank J. Miller, of Walker, Miller & Wakefield, Wilmington, for intervenor, Herman Koenigsberg.

Sotiere S. Kapsalis, Wilmington, and I. Walton Bader and Maximilian Bader, New York City, for objector, Arthur Hoffman.

Karl S. Horvath, Livonia, Mich., petitioner, did not have counsel at conclusion of hearing.

Robert Walls, Wilmington, for Herbert L. Cobin.

Daniel O. Hastings, Clarence W. Taylor and Russell J. Willard, of Hastings, Taylor & Willard, Wilmington, Lewis M. Dabney, Jr., and Herbert Robinson, of Liebman, Eulau & Robinson, New York City, for plaintiffs in Civil Action No. 1330 (except Dann after a certain period).

William E. Taylor, Jr., Wilmington, Norman S. Nemser and Stanley Nemser, of Nemser & Nemser, New York City, and Irving Steinman, New York City, for plaintiffs in Civil Action No. 1585.

Richard F. Corroon, of Berl, Potter & Anderson, Wilmington, and Robert H. Richards, Jr., of Richards, Layton & Finger, Wilmington, Francis S. Bensel and Robert Ehrenbard, of Kelley, Drye, Newhall, Maginnes & Warren, New York City, for defendant, Chrysler Corporation.

SEITZ, Chancellor.

This court approved the settlement of two stockholders' derivative actions in the so-called Chrysler litigation. Dann v. Chrysler Corp. and Gallo v. Ackerman (Del.Ch.), 198 A.2d 185. The Supreme Court of Delaware affirmed, Hoffman v. Dann, 205 A. 2d 343, and certiorari was denied by the United States Supreme Court, Hoffman v. Chrysler Corp., 380 U.S. 973, 85 S.Ct. 1332, 14 L.Ed.2d 269. Thereafter the reserved issue as to the plaintiffs' right to reimbursement for the fees and expenses of their counsel was tried and this is the decision thereon.

Plaintiffs in both actions have petitioned for sums for their Delaware counsel and out-of-state associates. The sums requested, in the aggregate, amount to about $6,-000,000. Chrysler is resisting the grant of

any allowance on grounds which are hereinafter delineated. Objector Hoffman, in capsule form, takes a similar position. Intervenor Koenigsberg says no benefits to Chrysler resulted directly from the settlement. It is helpful first to consider provisions of the Stipulation of Settlement which are pertinent to the present issues.

Each party defendant to the Stipulation denied all charges of wrongdoing. Plaintiffs purported to state the facts which motivated their agreeing to the settlement in the following recital:

"Plaintiffs having considered, among other things, the significant and steady progress in all phases of Chrysler's operations under new management, believe settlement of the litigation on the terms herein agreed, with the estimated benefits which will flow to Chrysler and its stockholders by reason of the amendment to the Incentive Compensation Plan, can fairly be considered an achievement of the objectives of the litigation and is much to be preferred to a continuation of the litigation and is in the best interests of Chrysler and its stockholders."

The Stipulation then provides in Paragraph 1 as follows:

"Consideration for the Stipulation is the modification of the authorization for incentive compensation awards by Chrysler as hereinafter provided, together with any other matters or things, which in law or in equity may constitute consideration for the dismissal of all of the actions referred to herein and the releases to be given as hereinafter provided."

Paragraph 9 of the Stipulation is particularly applicable to the present problem:

"It is hereby represented by each of the parties hereto that there are not, and have not been any agreements express or implied, as to the amount of attorneys' fees to which the respective attorneys for the plaintiffs in the above actions may be entitled; except that the individual defendants hereto and Chrysler acknowledge that the aforesaid modification of the authorization for incentive compensation awards by Chrysler is the result of the bringing of the litigation and the specific suggestion of plaintiffs' counsel. There is no further agreement as to any other causal connection between the activities of plaintiffs' counsel and any other benefits which may have been received by Chrysler."

Plaintiffs' attorneys explicitly recognized in the Notice to the Stockholders of the settlement that their burden of proof was too great to promise success for the important claims in their complaints except as to the claimed improvements in the Incentive Compensation Plan ("Plan") and except as to a few instances of personal interest and profit on defendants' part. They also expressed therein the belief that their claims concerning alleged past managerial shortcomings had to be balanced against the more recent successes of management and the desire not to cause interference by distracting litigation. Once again, except for the modification in the Plan, defendants denied that plaintiffs contributed to changes or improvements at Chrysler.

The rather unorthodox terms of the settlement heralded the present trouble in connection with fee allowances. In settlements generally, all considerations are spelled out in the settlement papers. Thus, the court need not look beyond the settlement papers in seeking the forms of the alleged benefit. Such is not the case here.

█ As I construe the terms of settlement, Chrysler did not explicitly agree that, for purposes of fee allowances, plaintiffs conferred any benefit upon Chrysler. All Chrysler conceded was that the change in the Plan was a "consideration" for the settlement, plus any other matter which might in law or equity constitute consideration. But Chrysler argues that the evaluations

of the claims made in connection with the approval of the settlement show that the claims lacked merit. Plaintiffs assert that the settlement did not constitute an adjudication of the merits of the causes of action asserted. This is true in the sense that the process of approving a settlement does not require the court to determine claims on their merits as in ordinary litigation. Nevertheless, where, as here, the merits of the claims are not admitted, the plaintiffs have the burden of showing that they filed meritorious claims. In resolving that issue here the court is free to consider the evidence taken at the hearing on the fairness of the settlement as well as that adduced on the fee hearings.

■ As I evaluate the Stipulation of Settlement, plaintiffs were left free to try to show the basis for recovery of prelitigation investigation fees under the doctrine of Kaufman v. Shoenberg, 33 Del.Ch. 282, 92 A.2d 295. They were also permitted to try to establish a right to fees based on changes made at Chrysler after the filing of the lawsuits and before settlement which resulted in cognizable benefits proximately related to plaintiffs' actions. Rosenthal v. Burry Biscuit Co. (Del.Ch.), 209 A.2d 459; Mintz v. Bohen (Del.Ch.), 210 A.2d 569. Finally, they were free to try to demonstrate that the settlement itself produced benefits which entitled plaintiffs' counsel to fees. It is thus apparent that plaintiffs were in a position to assert and to attempt to prove that their activities resulted in numerous legally cognizable and therefore compensable benefits to Chrysler. To what extent have they succeeded?

■ Before considering plaintiffs' claims, it is appropriate to note that while Deleware courts recognize that the "benefit" for allowance purposes need not necessarily be money or property, Mencher v. Sachs, 39 Del.Ch. 366, 164 A.2d 320; Richman v. DeVal Aerodynamics, 40 Del.Ch. 548, 549, 185 A.2d 884, not every so-called benefit will support the awarding of monetary compensation to a stockholder's attorney in this type of case.

Against this background, I turn to plaintiffs' claimed benefits, remembering that the Gallo plaintiffs rely almost exclusively on the change in the Incentive Compensation Plan as the benefit conferred for purpose of an allowance of fees to their counsel.

I first consider the Dann plaintiffs' claims to investigation fees under the theory of Kaufman v. Shoenberg, above. They say that they made demands of substance on defendants which resulted in beneficial corrective action being taken by Chrysler before plaintiffs' complaint was filed on August 12, 1960.

■ There is a factual answer to plaintiffs' contention, regardless of the burden of proof. I feel that prior to filing suit, Dann did not make any demands (except perhaps as to the Keller family and Nafi, as to which no benefit is apparent) which themselves could have permitted any specific meaningful action to be taken by Chrysler. I say this because of the general nature of his charges and, more importantly, because of Dann's explicit refusal to be more specific when so requested by Chrysler's executives and attorneys. Plaintiffs say that more specific demands were not made because those to whom they would have been made were themselves guilty of wrongdoing. There are at least two answers to this position. First, in such a situation the principle of allowance of investigation fees (Kaufman v. Shoenberg) is inapplicable because it assumes a demand. Next, I am satisfied from all the evidence taken after the commencement of the actions that Dann actually lacked a knowledgeable basis for making an explicit meritorious demand at that time. As to the Markewich action filed in New York, the only pre-litigation demand there involved Newberg, with whom Chrysler had already made a settlement.

The plaintiffs claim, perhaps inter alia, the following specific dollar benefits to

Chrysler resulted from their activities (some occurring before and some after the commencement of the litigation):

| | |
|---|---|
| Newberg settlement | $ 455,000 |
| Surrender of Newberg stock options | 5,500,000 |
| Stone settlement | 275,000 |
| Surrender of Colbert stock options | 5,500,000 |
| Surrender of Minor stock options | 315,000 |
| Forfeiture of Retirement income by Colbert | 156,600 |
| Forfeiture of Retirement income by Newberg | 169,200 |
| Surrender of N. Kelley, Jr. stock options | 336,000 |
| | $12,706,800 |

Let us analyze the listed items of alleged benefit. I have already disposed of the Newberg matter and so those items may be passed. As to Stone, it appears that claims against him and his settlement with Chrysler arose out of facts discovered at the time of the investigation of Newberg and before the filing of these actions. Furthermore, no pre-litigation demand was made with respect to Stone. While the Stone settlement came after these actions were filed, I conclude that in fact it was in the course of being "processed" by Chrysler prior thereto. Consequently, taking it that plaintiffs filed a meritorious claim, the fact is that the benefit therefrom to Chrysler was nominal. It will be considered in fixing the total allowance.

As to Minor, it appears that plaintiffs did make charges against him in their complaint filed on August 12, 1960. On September 30, 1960, Chrysler forced him to resign. However, he sued Chrysler for loss of employment, etc. That litigation was settled by Chrysler paying Minor $12,000. Plaintiffs say they forced Chrysler to act when they filed their meritorious charges against Minor. They claim benefit to Chrysler in that Minor surrendered stock options which they value at $315,000.

I conclude that plaintiffs' claim had merit within the meaning of the rule in Rosenthal v. Burry Biscuit Co., above. However, under the rule of that case, I am satisfied that plaintiffs have the burden of showing benefit within the meaning of the compensation rule. I find that the net benefit is difficult to ascertain because Chrysler paid $12,000 in settlement of the litigation and also presumably paid their own attorneys' fees. It did obtain the surrender of Minor's stock options and this was a benefit. I say this because these options had a period of years to run and, being calls at a fixed price, clearly were valuable. They had a substantial potential even though, at the surrender date, their value was questionable because of the then market value of the Chrysler stock. However, I determine that the value attributable to this factor is substantially less than that attributed to it by plaintiffs. I rest my conclusion somewhat on the fact that the value placed on them by plaintiffs is based on hindsight evidence, i. e., increase in the value of Chrysler stock after the event. But more to the point, I think it reasonable to infer that these or equivalent options were issued to a replacement for Minor. I therefore do not fix a dollar value on the benefit flowing from this claim. Rather, I give this benefit some consideration in placing an ultimate dollar value on the services of plaintiffs' counsel.

I come next to the Kelley, Jr. claim. It is true that plaintiffs made charges against him and that he thereafter left Chrysler. Can we say that plaintiffs filed meritorious causes of action against him? I am satisfied that plaintiffs have the burden of proof on this issue whether or not it is within the rule announced in the Burry Biscuit case. Furthermore, I am satisfied from the record made at both hearings that plaintiffs failed to sustain their burden of showing that they filed meritorious claims against Kelley. Thus, the issue of alleged "benefit" is not reached.

■ This brings me to the numerous claims asserted in these actions against Colbert, and his subsequent resignation, upon request, as Chrysler's Chairman on July 27, 1961. While one may quarrel with Colbert's executive capabilities, I do not believe plaintiffs sustained their burden of showing that they filed meritorious causes of action against him. These causes were the subject of elaborate evidence in connection with the settlement hearings and were developed largely by the Objector Ezzes. The fact that Chrysler apparently found Colbert "expendable" in its search for a device to refocus Chrysler's corporate image is not a basis for the allowance of attorneys' fees when the burden concerning the merits of claims against him were not sustained. This being so, I do not reach the issue of alleged benefit flowing therefrom to Chrysler.

Plaintiffs claim that they filed numerous other meritorious causes of action and they are entitled to consideration in ascertaining the benefit to Chrysler which may be employed in allowing fees here. They refer to the change in the stock option plan and numerous other claims. The stock option cause of action did not constitute the filing of a meritorious cause of action as the opinions on the settlement demonstrate. The same is true of other claims made except that technically the claim concerning the revolving credit matter had merit because there was a proven violation of Chrysler's by-law. However, the benefit was therapeutic and is not given an independent dollar value. Rather, it also is considered in fixing the ultimate allowance.

But the so-called Dann plaintiffs (not the Gallo) argue most vigorously that through their activities, including their charges of mismanagement and their prayer for a receiver, they brought about a "Change in Management" at Chrysler; that this was the primary objective of the litigation; and that it was a benefit which they are entitled to have the court consider in fixing their fees. Plaintiffs cite certain cases from other states which they say support their

contention that such a factor is entitled to consideration in this type of proceeding. I find them inapplicable to the present factual situation.

■ "Change of Management" can mean many things to many people. But let us take it in the sense that I understand plaintiffs use it here, viz., a change in the chief executive personnel and a switch to a board with a majority of outside directors. And I shall assume without deciding that this type of change of management could under the requisite showing warrant the allowance of fees to plaintiffs' counsel in a derivative action. But certainly not every change of management taking place during the pendency of a derivative action attacking management justifies an allowance. For example, suppose in a pending action there is a change of management and yet the lawsuit is dismissed as lacking merit. Surely the plaintiffs could not receive allowances on the theory that their unsuccessful action benefitted the corporation because the management was changed. The plaintiffs here will say that the change was proximately related to the filing of the claims in these actions. But plaintiffs must prove more than proximate relationship. Where the merits of the claims are denied, I believe, even for fee purposes, the plaintiffs must also prove that the claims which form the basis for an attack on management were meritorious. Under the terms of the settlement here the plaintiffs were free, within the range of reasonableness, to do so for purposes of supporting their fee petitions.

I am satisfied from the representations in the Notice, the evidence taken at the hearing on the settlement and the later hearing on the fee applications that the Dann plaintiffs' counsel failed to prove that they filed meritorious claims of the type which would have justified judicial action against the existing management to the extent that a court-mandated change was remotely possible by receivership or otherwise. I emphasize that I believe plaintiffs here had the burden of showing that they filed meritorious claims relating to this issue. But, in

any event, I am satisfied that the same result would follow were the burden reversed.

I do not want to be understood as saying that there was no significant change at Chrysler during 1960 and 1961. There was. And I am satisfied that it was prompted in part by the public charges and activities of Mr. Dann, the bulk of which lacked legal substance But the Dann plaintiffs admit that the "new" management was not their choice. Indeed, the Dann plaintiffs named as defendants and made serious pleading charges against the very individuals whom they now contend constituted the "new management". They attacked these individuals by an amendment filed after they became the new management. Thus, rather than being given credit for the changes, they must be said to have attempted to tar the new management with the same brush they applied to the old. Next, some of the so-called changes and improvements in Chrysler relied upon by plaintiff were "in the works" before the time when plaintiffs say the new management took over. For example, the reduction of personnel and improvement of quality control were not initiated by "new" management. In addition, most of the new management consisted of personnel who were long time employees of Chrysler. Certainly plaintiffs cannot take credit for the benefit flowing from the great increase in profits to the extent they resulted from the general resurgence of the automobile industry.

■ The rule regarding reimbursement of stockholders for the expenses of their counsel in this type of action must be applied so as to accomplish the prime purpose for the existence of the remedy—to correct wrongs to the corporation. Here the agreed settlement did not produce any consideration flowing to Chrysler from the real defendants. The derivative action device cannot be used by the courts to reward failure. There is an understandable tendency on the part of plaintiffs' counsel in this type of case to equate protracted professional services with benefit. One does

not necessarily generate the other or justify the use of sympathy as a substitute.

I need not consider situations where the terms of settlement or the decision in the litigation provides concrete and substantial results in the management area which can reasonably be attributable to stockholder activity. Neither exists here.

I conclude that the so-called change in management at Chrysler is not here a factor to be given independent weight in passing upon plaintiffs' fee applications. If I am wrong, then counsel for the Dann plaintiffs would be entitled to substantially greater fees than are here allowed.

I come finally to the claim of all plaintiffs that the change in the Plan conferred a benefit which warrants the allowance of fees. Chrysler denies that it was a "benefit" for present purposes.

■ Considering the representations in the Stipulation and Notice concerning the Plan in conjunction with the evidence adduced thereafter in support of the settlement, I conclude that the modification of the Plan was a benefit proximately flowing from the settlement which warrants the allowances of some fees, unless subject to some other defense. My reasons for so concluding are that as a matter of business judgment the change in the Plan may be expected to benefit Chrysler, at least long range. It admittedly improved the incentive compensation package which Chrysler offers many of its important employees. It thus aids Chrysler in acquiring and retaining higher quality personnel in a highly competitive industry. It may also be noted that the Supreme Court opinion approving the settlement indicated the probability of benefit to Chrysler's stockholders as a result of the operation of the Plan. The advantage of the new plan—long range—over the old plan is discussed in the opinions approving the settlement and was relied upon by Chrysler in advocating approval of the settlement.

But Chrysler, Koenigsberg and Hoffman argue that plaintiffs cannot be allowed any compensation. Hoffman's contention does not warrant independent consideration. Koenigsberg says that plaintiffs' counsel should be denied any compensation because of improper duress. His point is that plaintiffs used the threat of continuation of meritless derivative claims to force the stockholders to vote to settle by modifying the Plan. I must say in answer that the Plan has been approved as fair and reasonsonable and Koenigsberg's argument appears to be tardily directed to that issue. Next, in passing upon fee applications, the court is not permitted here to assume that all the claims were so lacking in merit that they did not justify approval of the settlement on any terms.

Chrysler says that all plaintiffs' attorneys are disqualified from receiving fees because they departed from ethical and other standards and because Dann repudiated the settlement. Practical limitations of time and space prevent my discussing in detail each of the eight charges made by Chrysler. I shall therefore dispose of the issues with conclusory statements.

 Addressing myself first to the actions of the Dann plaintiffs and their counsel, I do not believe the fact that one or more of such plaintiffs also acted as attorneys herein, in and of itself, is an ethical block to recovery. I cannot find by the requisite legal standard of proof that some of plaintiffs' attorneys stirred up or solicited the litigation involved. The claim that the plaintiffs' attorneys brought the litigation without sufficient basis is not without some appeal. However, considering here the relative availability of knowledge, as between plaintiffs and defendants, of certain "suspicious" facts, I cannot say that their action justifies the disallowance of all fees, particularly in view of the Stipulation. However, it is a negative factor in evaluating a reasonable fee under the circumstances, particularly because it caused Chrysler to incur substantial legal fees and

expenses to show the lack of substance to nearly all the charges. The claim that the Dann group entered into an unethical fee-sharing arrangement is not proved by the credible evidence. The charge of unethical conduct on the part of some counsel in making statements to the press is troublesome. I believe Dann himself was guilty of issuing statements which, as a lawyer, were unwarranted, but I cannot conclude that all plaintiffs' counsel should bear the burden of his actions even though they must bear some responsibility (other than the Gallo lawyers). This will be considered in connection with Dann's participation in his firm's fee application because it worked an economic disadvantage to Chrysler. However, Chrysler activities in this regard left something to be desired. Indeed, some of its Delphic utterances concerning related matters during the crucial period added fuel to the fire. Lastly, the charges concerning attempts to serve conflicting interests and the pursuit of personal interest by fiduciaries is certainly applicable to Dann himself.

 The Dann firm argues that one allowance should be made to all four firms who represented the Dann plaintiffs and it should be distributed in accordance with their arrangement. For reasons hereinafter noted, I believe I should treat the fee petition of the Dann firm apart from the joint petition of the other three firms who were counsel for the Dann plaintiffs. Dann seeks no individual allowance but says he will take his 25% participation in any allowance to his firm. Based on the facts previously discussed, as well as his numerous other deviations from acceptable norms, I conclude that Dann should be denied any compensation. In this connection I note particularly his unwarranted conduct during the settlement phase of the litigation and particularly his actions in connection with his attempted repudiation of the settlement after he had approved it and testified in support of it. The latter certainly was not in good faith and increased Chrysler's expenses substantially. His motives I will not

dissect, except to suggest that they are not entitled to judicial approval. This case differs materially from such cases as Ontjes v. MacNider, 234 Iowa 208, 12 N.W.2d 284. Here, inter alia, unlike the plaintiff there, Dann's legal work after filing the action was minimal while his substantial activity was obstructive. The other firms carried the legal load while Dann engaged in public combat with Chrysler.

▪ What should be done with the petition of the Dann firm in view of my decision with respect to Dann? I cannot bring myself to conclude that Dann's partners should be deprived of all compensation under the rule covering the· responsibility of partners inter sese or under the doctrine of ratification. I think the application of those rules would be unduly harsh and unwarranted in view of the circumstances. Moreover, for these reasons, inter alia, I do not believe the other firms in the Dann group of counsel should be barred from all compensation. After all, the firms did contribute very substantial services in connection with the modification of the Plan.

▪ I address myself now to the Gallo plaintiffs. Chrysler says their counsel violated the Canons of Ethics in that they brought the actions without a sufficient basis and, without reason, filed an independent action rather than intervening. While the Gallo plaintiffs obviously had the benefit of the Dann complaint, I am satisfied that they also engaged 'in substantial independent investigation. I do not believe they violated any Canon of Ethics in pursuing the course they adopted, including, under the circumstances of this case, the filing of an independent action. I say this because of the confused and questionable status of many of the claims in the Dann litigation at that time as well as Dann's personal involvement generally. I should note also that the Gallo attorneys made a substantial contribution to the change in the Plan. I believe they are entitled to some compensation.

In summary, I conclude that plaintiffs' counsel in the Gallo case and all counsel in Dann v. Chrysler Corp. except Dann himself are entitled to a reasonable allowance based on the benefit to Chrysler flowing from the modification of the Plan and the other small factors previously identified. However, there is no unfairness here in considering the unsuccessful as well as the successful aspects of plaintiffs' activities if "benefit" to Chrysler is to be the measuring rod. Obviously, Dann's conduct caused Chrysler to expend substantial sums to counteract his unwarranted action and this tends to reduce the "benefit" conferred by plaintiffs' action in "causing" the Plan to be modified, etc. Thus, Chrysler will pay fees to defendants' attorneys in excess of a million dollars. These factors are considered in arriving at a reasonable fee under the circumstances.

▪ I come now to an evaluation of the "benefits" conferred by the change in the Plan. At the outset, it must be said that the benefits cannot be "proved" in dollar terms, yet I am satisfied that they are present and real. I have already mentioned them. Because of their nature, I believe they can most appropriately be translated into dollars by adopting a quantum meruit approach with respect to the difficult and prolonged work on the revision of the Plan and the few additional cognizable benefits conferred by the filing of the actions. As an overlay, I also consider the contingent nature of the matter. Nor must the substantial efforts of plaintiffs' counsel except Dann in support of the approval of the settlement be overlooked.

Before dealing with dollars, one other issue must be considered. The fees of the four firms representing the Dann plaintiffs were the subject matter of a written agreement. Counsel for such plaintiffs other than the Dann firm raised the issue that the conduct of the Dann firm and Dann in particular resulted in a breach of the provisions of that agreement as between the Dann firm and the others. Passing over

that serious issue, I am satisfied, in any event, that under the present circumstances the agreement must be ignored in order that my decision concerning Dann himself may be fairly implemented. I do so.

I reiterate that the benefit from the change in the Plan is not to be measured in terms of what would have been paid out under the old plan in contrast to the new. Thus, Chrysler's argument that more has been paid out under the new Plan than would have been paid out under the old one misses the mark. I have stated what the real benefit is and to adopt Chrysler's approach now would be to repudiate a basis for the approval of the settlement.

Considering the benefit in its setting and with due allowance for the negative factors I have mentioned, I conclude that a total reasonable fee for the services of the Gallo plaintiffs is $75,000. This is based primarily on their work in raising the percentage of set-aside under the Plan and in accelerating its effective date. However, their substantial work in getting it approved is also considered. I do note that the Dann plaintiffs had already reached an accord on the principal change in the Plan before the Gallo counsel appeared.

Referring to all Dann plaintiffs, I believe a reasonable fee to their counsel based on benefits to Chrysler would be $400,000 before subtracting that portion which would otherwise go to the Dann firm as representing his participation.

I conclude that of the $400,000, the sum of $300,000 should go to the Dann petitioners' counsel other than the Dann, Rosenbaum firm.

As to the Dann, Rosenbaum firm, the $100,000 fee to which it, in my view, would otherwise have been entitled, should be reduced to $75,000. In effect I am deducting from the firm's payment Dann's 25% share under his firm's participation arrangement. I have already delineated the reasons why I believe Dann, in effect, is disqualified from receiving fees. However, I believe

the only equitable approach in view of the work done by the firm as such is to omit Dann's share from the payment, rather than to penalize the firm generally.

Next, in connection with petitioners' applications for reimbursement of expenses, it is quite impossible to allocate each item of cost so as to arrive at the portion applicable to work on the change in the Plan and the other items of benefit. I have examined the items set forth in petitioners' affidavits which they affirmed in their testimony. I conclude on the basis of the present record that allowing a percentage of the total is as reasonable an approach as any. In arriving at percentages I have tried to evaluate petitioners' over-all efforts in comparison with those related to the change in the Plan and its approval plus the other minor benefits. I have also evaluated the character of some of the charges and taken that into consideration. The following is my best judgment as to the costs which should be allowed:

Liebman, Eulau & Robinson—25% of request, being $1,362.87

Lewis M. Dabney, Jr.—25% of request, being $881.92

Hastings, Taylor & Willard—25% of request, being $2,502.78

Dann, Rosenbaum—10% of request, being $1,919.26

William E. Taylor, Jr. and Nemser & Nemser—50% of request, being $5,916.-39

I have allowed a higher percentage to the Gallo plaintiffs because relatively much more of their activity related to the change in the Plan. I have allowed only 10% to the Dann firm because, inter alia, I am satisfied that much of the Dann claim related to activity which produced no benefit for Chrysler even though incurred and possibly borne in large measure by the partners other than Dann.

Other arguments made by the parties in connection with plaintiffs' applications have been considered and, to the extent necessary, have been resolved in a manner consistent with my stated conclusions.

I next consider the fee arrangement made between Chrysler and Cobin, Dann's attorney in the libel action. This is discussed in my opinion approving the settlement. The matter was never submitted to this court for determination and so I am not required to pass upon it directly. Nor need I consider it in connection with the reasonableness of a fee to Dann because I have disallowed any fee to him.

Finally, I consider the so-called Horvath claim. Horvath is not an attorney but was the plaintiff in the Dann action and did some investigatory work primarily for Dann. I will not trace the bizarre nature of his activities and interests during the years of this litigation except in one particular. Horvath was represented by the attorneys for the Dann plaintiffs until some point in the fee hearings. His relationship to his counsel became such that the court suggested, in view of developments, there was a conflict of interest between his interests and those of his counsel. The court further suggested that he should obtain new counsel and gave him time for that purpose. He did not obtain new counsel, but of greater importance, he refused to come back to Delaware to complete his testimony although given an opportunity to do so.

 Other factors aside, I am forced to conclude that Horvath is not entitled to compensation from Chrysler because his activities were not shown to have conferred a cognizable benefit on Chrysler and because his conduct was grossly and inexcusably incompatible with acceptable standards.

This whole matter has been most difficult because of the numerous cross currents and unorthodox behavior which have character-ized much of the proceedings. I can only hope that I have reduced the chaos to manageable proportions, at least dollar-wise.

Present order on notice.

## On Motion for Reargument

SEITZ, Chancellor.

 Intervenor Koenigsberg has moved for reargument. He correctly states that the court's opinion says that he contended that plaintiffs used the threat of continuation of meritless derivative claims to force the stockholders to vote to settle by modifying the Plan. Koenigsberg says this was an erroneous statement of his presentation in that he contended that it was the use of the threat of continuation of the derivative claims "which they [plaintiffs' counsel] had admitted and had represented were probably worthless and of probable detriment to the stockholders' interests if continued", which was the basis for his argument. Accepting Koenigsberg's correction, I do not believe it is of substance or alters my conclusion.

Koenigsberg also objected to the use of "tardily" in the opinion in connection with this argument. By its use I did not intend to imply that the same argument had not been made at the hearing on the fairness of the settlement. It was made and was equally lacking in merit at that time as the opinions on the settlement show.

The Dann, Rosenbaum firm has also moved for reargument. It is denied.

 The objector Hoffman filed a motion for reargument after the expiration of time for filing such a motion. This is not his first failure to observe the court rules in this case. His motion will not be considered.

The motions for reargument are denied and the final judgment to be entered herein may so provide.