CHRYSLER CORPORATION, Defendant Below,
Appellant, Cross-Appellee,

*vs.*

SOL A. DANN *et al.* and MARY L. GALLO *et al.*, Plaintiffs and Petitioners Below,
Appellees, Cross-Appellants.

*Supreme Court, On Appeal, October 17, 1966.*

*Russell J. Willard, Jr.,* of Hastings, Taylor & Willard, Wilmington, *Lewis M. Dabney, Jr., Samuel Beck* and Liebman, Eulau & Robinson, New York City, for Julius R. Reiver, Iona P. Reiver, Ann Gelbard and Robert Markewich, plaintiffs and petitioners below, appellees and cross-appellants.

*William E. Taylor, Jr.,* Wilmington, *Norman S. Nemser* and *Stanley Nemser,* of Nemser & Nemser, and *Irving Steinman,* New York City, for Mary L. Gallo and A. James Gallo, plaintiffs and petitioners below, appellees and cross-appellants.

*Januar D. Bove, Jr.,* and *Arthur G. Connolly, Jr.,* of Connolly, Bove & Lodge, Wilmington, for Dann, Rosenbaum, Bloom & Kaufman, petitioner below, appellee and cross-appellant.

*Sotiere S. Kapsalis,* Wilmington, *I. Walton Bader* and *Maximilian Bader,* of Bader & Bader, New York City, for objectors I. Walton Bader, Maximilian Bader and Arthur Hoffman.

*Richard F. Corroon,* of Berl, Potter & Anderson, *Robert H. Richards, Jr.,* of Richards, Layton & Finger, Wilmington, *Francis S. Bensel, Robert Ehrenbard* and Kelley, Drye, Newhall, Maginnes & Warren, New York City, for Chrysler Corp., appellant and cross-appellee.

WOLCOTT, C. J., CAREY, J., and STIFTEL, President Judge, sitting.

WOLCOTT, Chief Justice: These are appeals and cross-appeals from a judgment of the Chancellor fixing fees and awarding expenses to plaintiffs and objectors in derivative actions against Chrysler Corporation and certain individual defendants. For the purposes of argument, we consolidated the appeals and by this opinion dispose of all of them.

The litigation consists of two actions asserting 17 causes of action involving 70 seperate claims and charges, generally speaking, (1) that certain officers of Chrysler improperly had profited personally from

transactions between Chrysler and suppliers in which they had a personal interest; (2) that some of the individual defendants had mismanaged Chrysler from 1956 to 1961, and (3) that Chrysler's Incentive Compensation Plan and Stock Option Plan were not soundly devised and were unfair to Chrysler's stockholders.

Ultimately, a settlement agreement was reached which was, after hearing, approved by the Chancellor, *Dann v. Chrysler Corporation,* 41 *Del.Ch.* 438, 198 *A.2d* 185. On appeal, we affirmed. *Hoffman v. Dann, Del.,* 205 *A.2d* 343, cert. den. *Hoffman v. Chrysler Corporation,* 380 *U.S.* 973, 85 *S.Ct.* 1332, 14 *L.Ed.* 269. A full factual statement may be had by reference to the cited cases.

At the hearing on the settlement, the Chancellor reserved for future determination the allowance of fees and expenses. Following the affirmance of the settlement agreement, a hearing was held by the Chancellor at which evidence was received from the plaintiffs attempting to show benefits conferred upon Chrysler resulting from some of the plaintiffs' pre-litigation activities, relying on *Kaufman v. Shoenberg, et al.,* 33 *Del.Ch.* 282, 92 *A.2d* 295; benefit resulting to Chrysler as a result of changes in management after the commencement of the litigation proximately related to the litigation, relying on *Rosenthal v. Burry Biscuit Corp.,* 42 *Del.Ch.* 279, 209 *A.2d* 459, and, finally, benefits resulting to Chrysler as a result of the settlement.

The Chancellor, by an opinion, *Dann v. Chrysler Corporation,* 42 *Del.Ch.* 508, 215 *A.2d* 709, refused to allow any fees or expenses for pre-litigation activity or change in management. He allowed fees in a total amount of $450,000.00 and expenses in a total amount of $12,583.22. These allowances were made on the theory that benefit accrued to Chrysler as a result of the settlement.

All the parties have appealed; the plaintiffs on the ground that the amounts allowed are insufficient because they should have been allowed fees and expenses for the pre-litigation activity and for the change in management which they say resulted, in part at least, by reason of the litigation. Chrysler appeals on the ground that no allowances should have been made at all because no benefit whatsoever has been conferred upon it. It says the only effect upon it was expense caused by the necessity to defend and get rid of harassing litigation.

▮ The rules governing the award of fees and expenses to a litigant for payment of his counsel are well established. Ordinarily, a litigant must, himself, defray the cost of being represented by counsel. This general rule, however, is subject to an exception, *inter alia,* that when the litigation results in benefit to all members of a class, the successful litigant is entitled to an allowance for counsel fees to be paid from the fund or property which his efforts have created, the amount to be fixed in the sound discretion of the Chancellor. *Maurer v. International Re-Insurance Corp.,* 33 *Del.Ch.* 456, 95 *A.2d* 827. However, it is not an absolute necessity that monetary benefit be conferred upon the class as a whole provided the litigation, even though unsuccessful, has specifically and substantially benefited the class which, in a derivative action, is the corporation. *Gottlieb v. Heyden Chemical Corp.,* 34 *Del.Ch.* 436, 105 *A.2d* 461; *Mencher v. Sachs,* 39 *Del.Ch.* 336, 164 *A.2d* 320; *Richman v. DeVal Aerodynamics, Inc.,* 40 *Del.Ch.* 548, 185 *A.2d* 884.

This does not mean, however, that the mere filing of a derivative action against a corporation will justify the award of fees to plaintiff's counsel. Momentary reflection will demonstrate that to do so would encourage the filing of many such actions wholly lacking merit for the sole purpose of obtaining counsel fees. To guard against this undesirable result, therefore, the rule requires that not only must the action confer some benefit upon the corporation, but, also, that the action, when filed, was meritorious and had a casual connection to the conferred benefit. *Rosenthal v. Burry Biscuit Corporation, supra.*

▮ To justify an allowance of fees the action in which they are sought must have had merit at the time it was filed. It may not be a series of unjustified and unprovable charges of wrongdoing to the disadvantage of the corporation. The plaintiff must have some factual basis at least for the making of the charges. If there is none, then the conclusion follows that the action lacked merit and the plaintiff is entitled to no allowance for fees.

▮ The crux of the matter is the meaning of the phrase, "meritorious action." Chrysler argues that it means a cause of action which would survive a motion for summary judgment. We think, however, that the rule is not this demanding. A claim is meritorious within the meaning of the rule if it can withstand a motion to dismiss

on the pleadings if, at the same time, the plaintiff possesses knowledge of provable facts which hold out some reasonable likelihood of ultimate success. It is not necessary that factually there be absolute assurance of ultimate success, but only that there be some reasonable hope.

▇ Chrysler argues that in the stipulation of settlement these plaintiffs agreed that the causes of action asserted by them against Chrysler were without merit, and that, accordingly, fees must be denied. The Chancellor, however, held that this was not the fact and that, while the settlement was an admission by the plaintiffs that they lacked and could not obtain evidence to discharge the burden cast upon them, this concession was not an admission that all of the claims asserted lacked merit. He concluded that the plaintiffs were free at the hearing on the fee application to present evidence in an attempt to show that some or all of the claims were meritorious claims within the meaning of the rule regarding the award of fees.

We think the Chancellor was correct in this. The stipulation of settlement was an agreement among the parties to end the litigation. Chrysler on its part agreed that the change in the Incentive Compensation Plan was the consideration for the settlement, but made no concession that plaintiffs had conferred any benefit upon it whatsoever. The plaintiffs, on the other hand, conceded that they could not try all the claims to ultimate success, but reserved the right at the subsequent fee hearings to prove that some of the claims, at least, had merit within the meaning of the rule, and that they conferred benefit upon Chrysler.

▇ Chrysler's view of the stipulation of settlement basically is that in reality the consideration for it was the ending of meritless, vexatious and harassing litigation. It says that this was the only benefit conferred upon it. It may be the fact that Chrysler entered into the stipulation for the sole purpose of getting rid of the lawsuits, but the ending of litigation cannot be the consideration for the settlement of a derivative action since, as we pointed out in the appeal from the approval of the settlement, to do so is to buy off the plaintiffs.

The consideration for this settlement was the change in the Compensation Plan which the Chancellor found conferred benefit upon Chrysler. Chrysler argues to the contrary but we think the dismissal

of litigation can never be consideration for a settlement. In this case, the termination of the litigation may have been the justification which led Chrysler to enter into the settlement, but it was necessary to find some legal consideration to support this unprecedented form of settlement of a derivative action which resulted in no monetary payment passing from the defendants to the corporation. This consideration has been found to be the change in the Compensation Plan which will benefit Chrysler in the long run.

However, Chrysler says that the change in the Compensation Plan conferred no benefit upon it and that the action based on it was in fact a meritless cause of action. This argument is made in the face of Chrysler's position at the hearing on the settlement to the effect that the change in the Plan was the primary consideration for the settlement.

Be that as it may, however, the settlement was approved by the Chancellor and by this Court on appeal on the ground that an issue of fairness had been raised with respect to the old Plan. This, we think, was a holding that at the time of suit the cause of action with respect to the Plan had merit.

It is argued, however, by Chrysler that even if this be the fact, the change in the Plan conferred no benefit upon Chrysler because the adoption of the change has cost it $9,600,000 in excess of hypothetical payments under the old Plan.

The conclusion of no benefit does not necessarily follow, however. Since the new Plan requires increased earnings to flow to Chrysler to pay compensation greatly in excess of payment under the old Plan, it would seem to be the fact that Chrysler's profits have greatly increased since the change was put into effect. Presumably, these increased earnings were the result of additional effort on the part of Chrysler's personnel.

Furthermore, the Chancellor found that the new Plan improved the Incentive Compensation package offered to many important Chrysler employees. The change, therefore, was a long-range benefit to Chrysler in aiding it to acquire and retain highly qualified personnel in a very competitive industry. In both opinions dealing

with the approval of the settlement, this long-range benefit to Chrysler was relied upon in approving the settlement. Under the circumstances, we think the Chancellor was correct in holding that the change in the Plan was a benefit to Chrysler proximately flowing from the settlement, which warrants the allowance of some fees.

Certain other claims were urged by the plaintiffs as having merit, conferring benefit upon Chrysler and thus warranting an allowance of fees. The Chancellor refused to allow fees by reason of them. The claim based on pre-litigation investigations which plaintiffs claim triggered reform in Chrysler, was rejected by the Chancellor on the ground that no specific demands were made on Chrysler, or could have been made at that time. He denied fees for the Neuburg cause of action since Chrysler had already settled this claim when the actions were brought. He denied fees for the Kelley stock option and Colbert claim on the ground that they lacked merit.

We have examined the record and are of the opinion that the Chancellor's conclusions with respect to these claims find ample support in the evidence and we consequently affirm them.

This leaves for our consideration the claim for fees and allowances based upon the so-called change in management in Chrysler. This point is urged by the so-called Dann plaintiffs, (not the Gallo plaintiffs who filed a subsequent suit). The argument is that the activities of these plaintiffs, *viz.*, charges of mismanagement and their efforts to have a receiver appointed for Chrysler on that ground, caused sweeping changes in management to be made in Chrysler to the great benefit of Chrysler. They further argue that this was the primary objective of the litigation; that it was successful in that respect and that, accordingly, they are entitled to large fees for the great benefit conferred.

Admittedly, changes were made in Chrysler's management and these changes, coupled with an upsurge in the automobile industry, greatly increased Chrysler's earnings. The Chancellor recognized that under some circumstances a change in management as a result of litigation might well entitle the plaintiff to an allowance of fees by reason of benefit conferred. He held, however, that the plaintiff must first prove that the claims forming the basis of his attack on manage-

ment were meritorious when they were made and, second, that a causal connection existed between his charges and the benefit conferred, *i. e.,* the change in management and resulting larger earnings.

With respect to the first requirement, the Dann plaintiffs have failed, for all the claims, with the exception of the Incentive Compensation Plan claim, have been held to be without merit in this sense.

With respect to the establishing of a causal connection between the litigation, the Chancellor found that there was none, but that the change in management "was prompted in part by the public charges and activities of Mr. Dann,\* the bulk of which lacked legal substance." These activities were entirely distinct from the litigation. We think the Chancellor's conclusions in this respect were proper since Chrysler has not been "specifically and substantially benefited by the action." *Gottlieb v. Heyden Chemical Corp., supra.*

■ Since the Dann plaintiffs failed to establish that their claims had merit, and that there was a causal connection between the litigation and the change in management, it follows that they are entitled to no award based on benefit conferred by the change in management.

We turn now to the denial to Mr. Dann of any participation in the fees and expenses allowed his firm. It appearing that his interest in the partnership was 25%, the Chancellor directed that the fee of $100,000.00 allowed that firm be reduced by the 25% Dann interest to $75,000.00. The action was taken because of certain improper conduct of Dann and by reason of his repudiation of the settlement after he had agreed to it.

Chrysler argues that the Dann plaintiffs and their attorneys should be denied allowances for fees by reason of departures from ethical and other standards.

We will not discuss the matter in detail. For the reasons appearing in the *Chancellor's* opinion, *Del.Ch., 215 A.2d 709, 717-718,* we affirm his conclusion that all plaintiffs' counsel in the Gallo case and

---

\* Mr. Dann is a substantial stockholder of Chrysler. His public charges and activities were as a stockholder.

all plaintiffs' counsel in the Dann case, with the exception of Dann, himself, are entitled to reasonable allowances based on benefit to Chrysler as a result of the change of the Incentive Compensation Plan.

■ The Chancellor fixed the total amount of fee allowances at $450,000.00, and the total amount of expense allowance at $12,583.22. His reasons for so doing are set forth in 215 *A.2d* at page 719. The allowance of fees is a discretionary act on the part of the Chancellor and, as such, it is reviewed by this Court solely to determine if the Chancellor has abused his discretion.

■ The fees to be allowed are solely by reason of the benefit conferred on Chrysler by the change in the Compensation Plan. Obviously, this benefit cannot be measured in dollars; yet, the Chancellor has held, and we have affirmed, that a long-range benefit has been conferred. This being so, plaintiffs are entitled to counsel fees measured by that benefit.

■ This can be accomplished only by the exercise of sound business judgment. This, the Chancellor did by adopting a *quantum meruit* approach and arrived at a total amount of $450,000.00 as a fee for the services rendered. We think, for the reasons stated by the Chancellor, and in consideration of the contingent nature of the litigation, that his conclusion was not so unreasonable in the light of the record as to require a reviewing court to hold that there has been an abuse of sound judicial discretion by the Chancellor in his approach to the problem or in his conclusion.

The judgment below is affirmed.