# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SUNIL M. MALKANI, NICHOLAS MATARAGAS, and RED DRAGON PARTNERS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2020-1004-SG |
| GEMMA CUNNINGHAM a/k/a GEMMA TURI, CHARLES D. ROSEN, GARY WILSON, and TRUTHMD, LLC, a Delaware limited liability company, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Date Submitted:  November 8, 2023
Date Decided:  February 27, 2024

Philip Trainer, Jr., Marie M. Degnan, and Randall J. Teti, ASHBY & GEDDES, Wilmington, Delaware; OF COUNSEL: Marcos D. Jimenez, MARCOS D. JIMENEZ, P.A., Miami, Florida, *Attorneys for Plaintiffs*.

Ryan P. Newell, Lakshmi A. Muthu, Tara C. Pakrouh, and Michael A. Carbonara, Jr., YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Michael C. Heyden, Jr. and Joseph E. Brenner, GORDON REES SCULLY MANSUKHANI, LLP, Wilmington, Delaware, *Attorneys for Defendants.*

**GLASSCOCK, Vice Chancellor**

This matter involves contract rights of an investor, Plaintiff Sunil Malkani, in a Delaware LLC, Defendant TruthMD. The rights at issue are primarily embodied in a set of agreements, the "March 13 Consolidation." After a trial, I held in favor of Malkani of the enforceability of those agreements, notwithstanding Defendants' position—that Malkani had no contractual rights as an equity investor in TruthMD, and that the March 13 Consolidation was unexecuted and unenforceable. Defendants prevailed on a collateral issue, concerning Malkani's present right to veto a change in control transaction, which proved to be unripe.

Both parties seek their fees under a contractual fee shifting agreement embodied in two agreements in March 13 Consolidation. That provision shifts attorney fees to the prevailing party from the losing party. I find that Malkani, having established the validity of the March 13 Consolidation and securing his rights thereunder, is the prevailing party, entitled to his reasonable attorney's fees in this action. A full explanation of my reasoning is below.

# I. BACKGROUND

## A. Factual Background

The underlying proceeding in this action concerned an enforcement of a contract between a private investor and a Delaware LLC.[1] In 2016, Malkani purchased three Series E preferred units for $498,000.[2] From 2017 to 2020, the parties negotiated investment terms piecemeal as Malkani invested money into TruthMD.[3] TruthMD and Malkani, through counsel, negotiated an arrangement to consolidate Malkani's prior advances and ease his future loans to TruthMD.[4] These negotiations led to TruthMD and Malkani entering into three agreements: the purchase agreement (the "Purchase Agreement"), note (the "Note"), and nine-unit warrant (the "Nine-Unit Warrant") (collectively, the "March 13 Consolidation").[5] The Purchase Agreement contained a change-in-control provision, which provides in part that "[t]he Company shall not change its ownership, control or management structure . . ." without Malkani's prior written consent.[6] The Purchase Agreement

---

[1] This memorandum opinion is a brief recitation of facts and includes only those necessary to my analysis. For an in-depth version of the facts in the underlying proceedings, I will refer the reader to my January 31, 2023 Memorandum Opinion. *Malkani v. Cunningham*, 2023 WL 1383938 (Jan. 31, 2023) ("Mem. Op.").

[2] *Id.* at *1.

[3] *Id.* at *2–5.

[4] *Id.* at *4.

[5] *Id.*

[6] *Id.* at *2.

and Nine-Unit Warrant contain fee-shifting provisions for attorneys' fees and are governed by Delaware law.[7]

Section 10.10 of the Purchase Agreement provides:

**Attorneys' Fees.** In the event that any dispute among the parties to this Agreement should result in litigation, the *prevailing party* in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of *enforcing any right of such prevailing party under or with respect to this Agreement*, including without limitation, such reasonable fees and expenses of attorneys and accountants, which shall include, without limitation, all fees, costs and expenses of appeals.[8]

Section 9(i) of the Nine-Unit Warrant similarly provides:

In the event that any dispute among the parties to this Warrant should result in litigation, the *prevailing party* in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of *enforcing any right of such prevailing party under or with respect to this Warrant*, including without limitation, such reasonable fees and expenses of attorneys and accountants, which shall include, without limitation, all fees, costs and expenses of appeals.[9]

After the parties entered the March 13 Consolidation, TruthMD entered into an agreement for the potential acquisition of the Company.[10] Malkani voiced complaints about the transaction, after learning about the acquisition's structure, claiming that it was an attempt to line pockets of certain Board members and dilute his equity interest.[11] After receiving Malkani's comments, TruthMD refused to

---

[7] Pl. Mot. for Att'ys' Fees 3, Dkt. No. 211; Def. Mot. for Att'ys' Fees & Opp'n 3, Dkt. No. 215.
[8] Exs. A-B to Pl. Sunil M. Malkani's Mot. for Att'ys' Fees, Costs, and Expenses, Ex. A § 10.10, Dkt. No 211 (emphasis added).
[9] *Id.* at Ex. B § 9(i) (emphasis added).
[10] Mem. Op. 5.
[11] *Id.*

recognize his rights.[12] This action, the substantive parts of which I have already decided, followed.

*B. Procedural History*

The initial complaint in this matter was filed on November 21, 2020,[13] and an amended complaint was filed on June 28, 2021.[14] Plaintiffs asserted claims against Defendants for the following: (Count I) breach of fiduciary against board members arising from the structure of the Company's acquisition; (Count II) specific performance for delivery of a warrant for three additional equity units; (Count III) declaratory judgment that the March 13 Consolidation was valid and enforceable; and (Count IV) breach of contract with respect to the change-in-control provision contained in the Purchase Agreement.[15]

The action was bifurcated and a trial on Counts II-IV was held in April 2022.[16] After receiving post-trial briefing and hearing arguments, I denied Counts II and IV, but granted Count III.[17] On Count II, I held that Malkani did not produce clear and convincing evidence that he exceeded $2 million in funding for the additional three-unit warrant.[18] In determining Count IV, I found that Malkani's claim for breach of

---

[12] *Id.*

[13] *See* Pls.' Opening Br. in Supp. of Mot. for a TRO, Dkt. No. 1; *see also* Pls.' Mot. for Expedited Proceedings, Dkt. No. 1.

[14] Pls.' Verified Am. Compl., Dkt. No. 84 ("Am. Compl.").

[15] Mem. Op. *6.

[16] *Id.*

[17] *Id.* at *6–11.

[18] *Id.* at *9–10.

4

the change-in-control provision was unripe since there was not an imminent acquisition that would constitute a breach of the provision, and the provision did not prevent Defendant from seeking *potential* acquirers or engaging in negotiations.[19] Finally, in analyzing Count III, I held that the Nine-Unit Warrant, Note, and Purchase Agreement, which comprised the March 13 Consolidation, were valid and enforceable.[20]

Additionally, I held that the parties' attorney fee requests were premature considering that the action was bifurcated and Count I remained to be tried in the future.[21] I deferred consideration of the issue pending resolution of Count I and any additional disputes between the parties.[22] On April 21, 2023, the parties stipulated to dismissal of Count I without prejudice, making the fee issue ripe for decision.[23]

Presently, before me are the parties' Cross Motions for Attorneys' Fees, Costs, and Expenses.[24] I heard oral argument on the motions on November 8, 2023,

---

[19] *Id.* at *10.
[20] *Id.* at *7–8.
[21] *Id.* at *10.
[22] *Id.*
[23] Stipulation Dismissing Count I of Am. Compl., Dkt. No. 210.
[24] Pl. Mot. for Att'ys' Fees; Def. Mot. for Att'ys' Fees & Opp'n; Pl. Suni M. Malkani's Combined Answering Br. in Response to Def.'s Mot. for Fees, Costs, and Expenses and Reply Br. in Further Supp. of its Mot., Dkt. No. 217 ("Pl.'s Response. & Reply Br."); TruthMD, LLC's Reply in Further Supp. of Mot. for Fees, Costs, and Expenses, Dkt. No. 219 ("Def.'s Reply").

and took the matter under advisement on November 29, 2023, after the parties jointly informed the Court they were unable to come to an agreement.[25]

## II. ANALYSIS

### A. Malkani is the Prevailing Party in this Litigation

Under the long-established American Rule, parties are expected to bear their own litigation costs, unless a special circumstance warrants fee shifting.[26] There are exceptions, however; in particular the American Rule does not govern where a fee-shifting provision is present in contract litigation.[27] Where a fee-shifting provision is present, Delaware courts adhere to the plain meaning of the provision's language in determining whether a fee-shifting provision applies.[28]

Pertinent here are the Nine-Unit Warrant and Purchase Agreement, which both include an identical prevailing-party clause. Malkani contends that by successfully prevailing in litigation to enforce his rights under Section 10.10 of the Purchase Agreement and Section 9(i) of the Nine-Unit Warrant, he is entitled to attorneys' fees and expenses under the provisions, as he received declaratory judgment upholding the validity of the March 13 Consolidation.[29] TruthMD argues

---

[25] Oral Arg. Before Vice Chancellor Glasscock dated 11.8.23, Dkt. No. 221; Letter to Honorable Sam Glasscock III on behalf of all parties in follow-up to the hearing, Dkt. No. 223.
[26] *See Barrows v. Bowen,* 1994 WL 514868, at *1 (Del.Ch. 1994).
[27] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del.2007) (citing *Chrysler Corp. v. Dann*, 223 A.2d 384, 386 (Del.1966)).
[28] *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 281 (Del. 2022) (citing *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 683 (Del. 2013)).
[29] Pl. Mot. for Att'ys' Fees 9–11.

*it* is the prevailing party since it prevailed on Count II and IV.[30]  TruthMD also contends that Malkani waived his claim for fees under the Nine-Unit Warrant since he asserted the claim for the first time during post-trial briefing.[31]

TruthMD further asserts that under Count III, Malkani simply requested court intervention to *determine* his rights, not enforce them, and under the plain meaning of "enforcement" in Section 10.10 of the Purchase Agreement, Malkani is not entitled to fees.[32]  TruthMD relies on *Bako Pathology, LP v. Bakotic*, to support its argument, asserting that the plain meaning of the fee-shifting provision designates *it* as the actual party who prevailed in litigation, as Malkani merely vindicated his rights in litigation, and did not "enforce[e]" them as required by the fee-shifting provisions in each contract.[33]

In *Bako Pathology*, two doctors and a laboratory engaged in litigation regarding purported breaches of a partnership agreement and employment agreement, each containing fee-shifting provisions.[34]  The laboratory prevailed on claims under the partnership agreement and employment agreement, and the doctors

---

[30] Def. Mot. for Att'ys' Fees & Opp'n 9–13.

[31] *Id.* at 16–17.  However, I find that Malkani has not waived this claim because Defendants were put on notice before trial that a claim concerning the Nine-Unit Warrant could be invoked.  *See* PTO ¶ 11.  In addition, Malkani's complaint sought relief in form of reasonable attorney's fees as well, putting Defendant on further notice regarding attorneys' fees that could arise within this litigation.  *See* Am. Compl. (viii). In any event, the terms of the Purchase Agreement, under the facts here, are sufficient to accomplish the fee shifting Plaintiff seeks.

[32] Def. Mot. for Att'ys' Fees & Opp'n 16–17.

[33] *Id.* at 6–9.

[34] *Bako*, 288 A.3d 257.

prevailed on defending claims under another related contract and tortious interference with contract.[35] As a result of the lack of a clear prevailing party, the trial court declined to award fees to either party under the fee-shifting provisions, applying the overall prevailing standard, and the Supreme Court reversed.[36] The fee-shifting provision in the employment agreement provided:

> *If Company is the prevailing party* in any legal proceeding to construe, apply, interpret, enforce or defend any of Company's rights in *this Agreement*, Employee agrees to reimburse Company for all reasonable costs, expenses and attorney's fees incurred by Company in such proceedings.[37]

The fee-shifting provision in the partnership agreement provided:

> If any dispute between the parties hereto should result in litigation or arbitration, the *prevailing party in such dispute* shall be entitled to recover from the other party all reasonable fees, costs and expenses of enforcing any right of the prevailing party. . . (b) *"prevailing party" means the party who is **determined** in the proceeding to have prevailed or who prevails by dismissal, default or otherwise.*[38]

The Supreme Court held that although both provisions contained the phrase "prevailing party," the phrase in each provision held different meanings.[39]

The Supreme Court found that the fee-shifting provision in the partnership agreement required prevailing in the overall dispute itself before being entitled to

---

[35] *Id.* at 266.
[36] *Id.* at 280–283.
[37] *Id.* at 260 (emphases added).
[38] *Id.* at 262 (emphases added).
[39] *Id.* at 280.

fees.[40]   The Supreme Court determined that the fee-shifting provision in the employment agreement was narrower as it required successful vindication of rights under the contract as a prerequisite to fees.[41]   Accordingly, the Supreme Court found no error in the trial court's decision to use an overall litigation analysis to decline awarding fees under the partnership agreement.[42]   The Supreme Court, however, reversed the trial court's decision to decline fees to the laboratory under the employment agreement, since the laboratory prevailed on all claims under the employment agreement and was entitled to its fees.[43]

In this present case, the fee-shifting provisions contain similar language to the employment agreement analyzed in *Bako*, which required fee shifting for the prevailing party with respect to the specific agreement.[44]   Specifically, Section 10.10 of the Purchase Agreement specifies that the "prevailing party" is one who enforces rights "under or with respect to each agreement."[45]   Thus, the party in this action who prevailed on the litigation of contractual rights in way of the Purchase Agreement (or Nine-Unit Warrant) is entitled to fees.

---

[40] *Id.* at 282.
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.* at 262; Ex. A § 10.10; Ex. B § 9(i).
[45] *Id.*

Malkani brought this action seeking to establish the validity and enforceability of the March 13 Consolidation agreements in Count III.[46] Malkani prevailed on that aspect of litigation, as Malkani successfully put forth evidence of the Purchase Agreement and Nine-Unit Warrant, which I found created enforceable contracts.[47] The Defendants argue that obtaining a declaratory judgment—that the contracts are valid and enforceable—is not itself the "enforcement" of a contractual right. But the fee-shifting provision here provides that, with respect to "any dispute" among these parties, "the prevailing party shall be entitled to recover from the losing party all fees, costs and expenses" "of enforcing any right under *or with respect to*" the contract. Under the facts here, where Defendants denied that the contracts in question were enforceable, the contested declaratory judgment was a successful vindication by Malkani of a right with respect to the contract.[48] Thus, I find that Malkani successfully vindicated a right under the Purchase Agreement and Nine-Unit Warrant, entitling him to fees under those specific contracts and provisions.[49]

---

[46] Am. Compl. ¶¶ 111–16.

[47] Mem. Op. *6–9.

[48] The defendants narrow reading that the enforcement needs to be a vindication of a present contract right under the contract would read the phrase "with respect to" out of the fee-shifting provision.

[49] TruthMD's assertion that obtaining a declaratory judgment is not enforcing a right with respect to the plain-language of the fee-shifting provisions is unpersuasive since it runs afoul of a reasonable interpretation of "enforcement." *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions."). Put another way, TruthMD has been put on notice by my Memorandum Opinion that the March 13th Consolidation is enforceable and

TruthMD, by contrast, prevailed in respect to Malkani's preset right to enforce the Purchase Agreement in way of a change of control transaction, a right which was not presently ripe to invoke.[50]

In sum, presently before me are two parties who both prevailed on claims asserted under the operative contracts and provisions. It falls to me, then, to determine which prevailed in this matter. I do so by applying the traditional interpretation of "prevailing party."

As *Bako* and the case law preceding it instruct, the "prevailing party" is one who prevails on the preponderance of the action subject to the fee-shifting provision.[51] For example, in *Brandin v. Gottlieb*, the court held that a "prevailing party" is one who has "prevailed on most of her claims[.]"[52] Although, the party in *Gottlieb* did not prevail on every issue, the court found that since she succeeded on "important" claims during litigation proceedings she was entitled to fee shifting.[53]

---

therefore must govern themselves accordingly, which lies under a reasonable interpretation of "enforcing any right" of Malkani "with respect to" the contract. TruthMD acknowledges that the "outcome of this litigation is [ ] that Malkani has certain rights under the Purchase Agreement." Def. Mot. for Att'ys' Fees & Opp'n 13. It also concedes that Malkani's success on the declaratory judgment count put both parties on notice "that the agreements are enforceable, and will act accordingly." Defs.' Reply 5.

[50] TruthMD also prevailed on Malkani's attempt to vindicate a current right under a "Three-Unit Warrant Agreement;" that agreement did not involve a fee-shifting provision.

[51] *Bako*, 288 A.3d 282.

[52] *Gottlieb*, 2000 WL 1005954, at *27 (Del. Ch. July 13, 2000).

[53] *Id.*

11

In addition, in *2009 Caiola Family Trust v. PWA, LLC*, the court held that "[t]o achieve predominance, a litigant should prevail on the case's 'chief issue.'"[54]

I find that Malkani prevailed in the overall litigation and is entitled to fees, costs, and expenses. The central issue in dispute in this action was the validity of the March 13th Consolidation and its constituent contracts.[55] TruthMD asserted that Malkani had no rights under the agreements at all.[56] Malkani prevailed on that central issue, as Malkani successfully put forth evidence of the March 13 Consolidation, which I found created enforceable contracts. Accordingly, I find that Malkani, pursuant to the Purchase Agreement, is the prevailing party in the litigation concerning the Purchase Agreement and Nine-Unit Warrant, and is entitled to its reasonable fees.

*B. Malkani's Attorneys' Fees, Costs, and Expenses*

Under Delaware law, in addressing fee shifting, the court must assess whether the fees requested are reasonable.[57] In assessing a fee's reasonableness, the court considers factors set forth in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct, which, include the following:

---

[54] 2015 WL 6007596, at *33 (Del. Ch. Oct. 14, 2015) (quoting *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2009 WL 458779, at *9 (Del. Ch. Feb. 23, 2009)).
[55] Memo Op. 16. Defendant's assertion that the chief issue in dispute was Malkani's attempt to enjoin a potential merger is unfounded. Def. Mot. for Att'ys' Fees & Opp'n 13–14.
[56] *See* Def. TruthMD, LLC's Opening Post-Trial Br. 30–41.
[57] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.[58]

Plaintiff has submitted affidavits attesting to the reasonability of its fees, which amount to $1,345,202.43.[59]

TruthMD has not argued that these fees are unreasonable. Rather than find a waiver here, I will allow supplemental briefing on the issue of reasonableness, if the parties desire—otherwise, I will consider the request unopposed and do my own review of reasonableness.

### C. Malkani is Entitled to Fees on Fees

As previously outlined, the fee-shifting provisions pertain to "enforcing any right" that arises under the Purchase Agreement and Nine-Unit Warrant.[60] I found that Malkani is the prevailing party entitling him to fees. Thus, Malkani successfully

---

[58] Del. Lawyers' R. Prof'l Conduct 1.5(a).
[59] Aff. of Philip Trainer, Jr. in Supp. of Pl. Sunil M. Malkani's Mot. for Att'ys' Fees, Costs, and Expenses, Dkt. No. 211; Aff. of Marcos D. Jimenez in Supp. of Pl. Sunil M. Malkani's Mot. for Att'ys' Fees, Costs, and Expenses, Dkt. No. 211; Decl. of John Crivelli in Supp. of Pl. Sunil M. Malkani's Mot. for Att'ys' Fees, Costs, and Expenses, Dkt. No. 211 (collectively "Pl.'s Aff. in Supp. of Mot. for Att'ys' Fees").
[60] Ex. A § 10.10; Ex. B § 9(i).

enforced a right under the Purchase Agreement and Nine-Unit Warrant and is entitled to fees, costs, and expenses related to pursuing his fee application.[61]

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses is GRANTED and Defendant's Motion for Attorneys' Fees, Costs, and Expenses is DENIED. The parties should inform me by March 8, 2024, if further briefing is required.

---

[61] *See All Pro Maids, Inc. v. Layton*, 2004 WL 3029869, at *6 (Del. Ch. Dec. 20, 2004), *aff'd*, 880 A.2d 1047 (Del. 2005) (denying objection for fees-on-fees because the party's application concerned efforts related to enforcing an agreement).