**James M. BIRD, Plaintiff,**

v.

**LIDA, INC., a Delaware Corporation, Defendant.**

**Civil Action No. 14486.**

Court of Chancery of Delaware, New Castle County.

Submitted: Jan. 18, 1996.
Decided: April 4, 1996.
Revised: April 5, 1996.

---

**10.** *Contra Prescott, Ball & Turben v. LTV Corp.,* S.D.N.Y., 531 F.Supp. 213, 217 (1981).

R. Bruce McNew, Taylor, Gruver & McNew, P.A., Greenville, Michael J. Boni, Craig W. Hillwig, Kohn, Swift & Graf, P.C., Philadelphia, Pennsylvania, for Plaintiff.

Michael Hanrahan, Ronald A. Brown, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Defendant.

## OPINION

ALLEN, Chancellor.

Presented is a motion to dismiss a shareholder's complaint seeking an order requiring his corporation to pay his attorney a fee. Plaintiff is James Bird, a shareholder of Lida, Inc., a Delaware corporation. His complaint alleges that the effort of Mr. Bird's legal counsel has directly lead to the conferring of a substantial, quantifiable financial benefit upon the corporation. According to the complaint, the benefit was conferred by investigation and analysis of a possible claim against certain directors of the company arising from leases between the company and entities in which the directors are interested.

It is alleged that following a pre-suit demand upon the board, pursuant to Rule 23.1 of this court's rules, the board renegotiated certain of those leases, which resulted in the realization of financial benefits with a present value in excess of $600,000. Because the board acted upon plaintiff's demand in a manner satisfactory to plaintiff there was no reason to file the derivative lawsuit that stood behind the demand. The board however declined to pay plaintiff's expenses or an attorneys' fee in connection with the demand. This suit was then filed seeking an order requiring such payment.

Defendant asserts that the complaint fails to state a claim upon which relief may be granted. It claims, first, that this court lacks subject matter jurisdiction, since this suit seeks only a money judgment. Second, defendant asserts that Delaware law does not recognize a right of action for the reimbursement of investigation fees and expenses in the absence of litigation, the termination of which affords to the court a recognized opportunity to award costs when established factors are satisfied. Third, defendants assert that even if our law does recognize a cause of action of this sort, plaintiff's complaint shows that he could not have filed a meritorious derivative complaint, since he could not satisfy the contemporaneous ownership rule of 8 Del.C. § 327; thus, they say, he could not have been awarded a fee if the derivative suit *was* filed; and therefore should not be awarded a fee here, where no suit was ever filed. Lastly, it is asserted that fees cannot be awarded to a non-Delaware attorney by this court for services involving Delaware law.[1]

After briefly setting forth the facts alleged in Part I, I conclude in Part II of this opinion that this court properly has jurisdiction over this shareholder claim. In Part III I conclude that Delaware law does recognize an equitable right in appropriate circumstances to require a fair distribution of costs among all beneficiaries to a corporate benefit that has been occasioned by the work of one or more shareholders, even if that benefit is produced prior to the time at which a derivative suit is required to be filed. In Part IV I conclude that in order to be awarded a fee arising from conferring a corporate benefit, whether before or after filing suit, it is necessary that the matter presented to the board be "meritorious" as that term is defined in the relevant cases. Plaintiff's complaint does not satisfy that standard. Therefore, the pending motion to dismiss will be granted.

## I.

### *Facts Relevant To This Motion To Dismiss*

As set forth in the complaint the relevant facts are these:

(1) Plaintiff first purchased shares of Lida—a company that designs, manufactures, and markets textiles and fabrics for use in the production of women's sportswear—in its 1992 initial public offering.

(2) Prior to that time Lida had entered three leases with entities affiliated with its controlling shareholders.

(3) These leases were disclosed in Lida's 1992 IPO Prospectus and in its 1992 and 1993 SEC filings.

(4) On December 10, 1993 plaintiff's legal counsel wrote to the Lida board demanding that the board investigate the reasonableness of rent payments and rent increases imposed on the Company under the interested party leases.

(5) Thereafter the Lida board appointed a special committee which, in turn, investigated the reasonableness of the lease payments, retained independent real estate appraisal firms, and prepared a report. Following the special committee's recommendation, the Lida board renegotiated the leases to reduce the company's rental obligations. Under the renegotiated terms, Lida will save

---

1. I pass over this argument except to note that it represents a misunderstanding of the rule that states that in order to be awarded a legal fee for services rendered on a *quantum meruit* basis the plaintiff must be a member of the bar in the state where the services were rendered. Even accepting this rule as correct, it is quite obviously the case that, *e.g.,* a New York lawyer may be entitled to a fee from a client on a *quantum meruit* basis when part of what the lawyer did was construe legal rights governed by Delaware (or California) law.

an amount with a present value over $680,000.

(6) Plaintiff sought from Lida, but was denied reimbursement for his expenses, including a contingency-based legal fee for his counsel.

## II.

### *Motion To Dismiss For Lack Of Subject Matter Jurisdiction*

■ Defendant claims that this court does not have subject matter jurisdiction since plaintiff requests only a monetary award of attorneys' fees. Except as provided by statute, the Court of Chancery's jurisdiction as a general matter is limited to suits in which a traditional basis for equitable jurisdiction appears. *See* 10 *Del.C.* § 341 (1975). The fact that a complaint seeks only the award of a money judgment does not mean, however, that a legal remedy is adequate and this court is therefore without jurisdiction. *See* 10 *Del.C.* § 342. Generally, equity jurisdiction arise from two sets of circumstances. The first involves a request for an *equitable remedy:* injunction, constructive trust, specific restitution, *etc.* The second rests on the assertion of an *equitable right:* the right to hold a trustee to account, fiduciary duties generally etc. An equitable right may be remedied by the award of a money judgment in appropriate instances, but the fact that such relief is the only relief sought does not deprive the Court of Chancery of jurisdiction. *See Harman v. Masoneilan Intern., Inc.,* Del.Supr., 442 A.2d 487, 496–500 (1982).

■ The claim that plaintiff makes in this suit is essentially an equitable claim. He seeks the equitable apportionment among shareholders of Lida (or creditors if Lida were in or near insolvency) of the costs borne by plaintiff and his counsel in achieving a financial benefit for the collectivity. Whether characterized as a *quantum meruit* type claim or an equitable apportionment among co-venturers the gist of the claim is equitable. Therefore the fact that a sum of money is sought has no bearing upon this court's jurisdiction to hear the matter. *See McMahon v. New Castle Associates,* Del.Ch., 532 A.2d 601 (1987).

## III.

### *Motion To Dismiss For Failure To State a Claim*

■ (a). *The legal standard:* On a motion to dismiss for failure to state a claim, all well-pleaded allegations will be assumed to be true. The complaint will be construed in the light most favorable to the plaintiff. *E.g., Delaware State Troopers Lodge No. 6 v. O'Rourke,* Del.Ch., 403 A.2d 1109, 1110 (1979); *Morgan v. Wells,* Del.Ch., 80 A.2d 504, 505 (1951). Generally, the court will only dismiss a complaint for failure to state a claim if it appears to a certainty that plaintiff would be entitled to relief under no state of facts provable under the allegations. *E.g., Danby v. Osteopathic Hosp. Ass'n,* Del.Ch., 101 A.2d 308, 315 (1953), *aff'd,* Del.Supr., 104 A.2d 903 (1954); *Morgan,* 80 A.2d at 505.

With this standard in mind, I turn to the question whether the law recognizes a shareholder's right to recover attorneys' fees based on corrective action taken in response to a demand under Rule 23.1, but without the necessity of filing any complaint.

(b). *Large-scale setting of the problem:* As background to deciding this first issue, I first note in briefest summary the important role of the derivative suit and its stockholder reimbursement component in the efficient operation of the corporate form.

A fundamental condition of the corporate form when stockholders are widely dispersed, as typically occurs in public corporations, is that individual shareholders have little incentive to bear the costs associated with activities that monitor board of director (or management) performance. Of course, a fundamental advantage that the corporate form offers to owners of capital is the utility that an investor gains through centralized management. Centralized management allows passive (low cost) ownership and promotes investor diversification. Limited liability and the entity status of a corporation similarly allow investors to be relatively passive. While the conditions that allow investors to be rationally passive are a primary source of utility, they can also lead to inefficiency to the extent centralized management

may have incentives that are not perfectly aligned with those of the residual owners of the firm, which is inevitably the case. This imperfect alignment of incentives will inevitably lead to excess costs associated with centralized management.[2] For that reason *some* expenditures for shareholder monitoring would be efficient. Such monitoring is, of course, more or less costly to the shareholder who engages in it. In a public company with widely distributed shares any particular shareholder has very little incentive to incur those costs himself in pursuit of a collective good, since unless there is some method to force a sharing of costs, he will bear all of the costs and only a (small) pro rata share of any gains that the monitoring yields. Thus, it is likely that in a public corporation there will be less shareholder monitoring expenditures than would be optimum from the point of the shareholders as a collectivity. One way the corporation law deals with this conundrum is through the derivative lawsuit and the recognized practice of awarding to successful shareholder champions and their attorney's risk-adjusted reimbursement payments (*i.e.*, contingency based attorneys fees). *See generally* Robert C. Clark, Corporate Law § 9.5.4 (1986). The derivative suit offers to risk-accepting shareholders and lawyers a method and incentives to pursue monitoring activities that are wealth increasing for the collectivity (the corporation or the body of its shareholders). Of course that remedy itself suffers from deep agency problems and can lead to a variety of problems that for the most part can be passed over today.

From this economic analysis point of view, what appears relevant is that Mr. Bird and his counsel have (1) expended resources (2) at risk of loss (3) through which they uncovered an arguable excess cost of management (the "unreasonableness" of the leases); (4) and have taken action (making a demand upon the board) (5) which resulted in a substantial quantifiable financial benefit to the corporation. I suppose that on their face these considerations would support the conclusion that this is the sort of activity that rational shareholders would encourage and would agree to reimburse had they had the relevant information *ex ante*. If one so concludes, that would present a powerful argument in favor of construing corporation law to permit the reimbursement of shareholder costs and fees in this setting.

(c). ***Legal institutional aspects of the problem:*** The law comprises more than the determination of contested facts and the unmediated application of principles of economic efficiency to resolves disputes arising from those facts. This is true even of corporation law, which may be thought to be especially concerned with facilitating the realization of benefits from efficient forms of organization. In determining the rule of decision in a specific case, courts apply law. While notions of economic efficiency will appropriately play a role in the myriad instances in which common-law courts shape the law interstially, case by case, courts do tend to look first, and often last, not to calculation of (contestable) efficiency effects, but to concerns more directly affecting legal values. Thus, courts are primarily concerned with legal values such procedural fairness; fidelity to authoritative pronouncements of substantive law; the application of a professionally defined canon of construction techniques to produce legal meanings; and the acceptance of an established hierarchy of authority. More generally, in our system courts reflect an institutional commitment to obedience to binding authority, to rationality, to consistency in judgments and to elaborated, reasoned justifications. These institutional values may trump efficiency concerns in a particular case, although quite often they will be consistent with such concerns. Therefore, it is not satisfactory for a court to begin and end its analysis of a legal problem with the sort of economic analysis set forth above. We must address another level.

Fortunately in this instance, we have precedent available to guide that inquiry. That precedent is a forty-five year old case by Chancellor (later Chief Judge) Seitz. *Kaufman v. Shoenberg*, Del.Ch., 91 A.2d 786, *and* 92 A.2d 295 (1952) was a derivative suit

---

2. Alchian and Demsetz, *Production, Information Costs and Economic Organization*, 62 Am.Econ Rev. 777 (1972); Jensen & Meckling, *Theory of the Firm: Managerial Behavior, Agency Costs and Ownership Structure*, 3 J.Fin.Econ. 305 (1976).

challenging the granting of certain stock options to employees. The suit was preceded by a demand upon the board pursuit to Rule 23.1. While the board generally declined to conform to the demand, in one respect it did so. Among the items in the demand was a objection to a corporate resolution providing for certain annual compensation to members of the board's stock option committee. The shareholder asserted that the resolution was inconsistent with the corporate charter and bylaws. After receipt of the demand, the board rescinded the resolution and recaptured the compensation that had been paid under it. 91 A.2d at 797. Nevertheless, the derivative complaint included as the Eleventh cause of action the matter of the resolution. The Court of Chancery "ruled that since the Corporation complied with the demand made in connection with the Eleventh cause of action within a reasonable time thereafter" that cause of action should be dismissed. 92 A.2d at 295. On the main claims defendants prevailed. Thereafter plaintiff sought an award of attorney's fees with respect to the matter set forth in the Eleventh cause of action. The court posed the following question:

> [W]hether, as a matter of law, a stockholder is entitled to his reasonable investigation fees if his demand produces some real benefit to the corporation without the necessity for litigation.

92 A.2d at 295.

To this question the court gave an affirmative answer, providing that plaintiff "is able to substantiate his contention factually." *Id.* The reasoning supporting this result was straight-forward and sound:

> [S]ubstantially the same benefit accrues to the corporation whether it be as a result of the demand or of successful litigation. To grant a fee based upon legitimate investigation expenses in connection with a successful demand is to discourage litigation and yet encourage stockholder vigilance, without unduly prejudicing the general corporate welfare.

*Id.*

While *Kaufman* is the only case in the Delaware corporation law adjudicating this issue, this court had another occasion to comment upon a shareholder's right to recover fees for benefits conferred on a corporation without the need for litigation in *Dann v. Chrysler Corp.*, Del.Ch., 215 A.2d 709, 713 (1965), *aff'd*, Del.Supr., 223 A.2d 384 (1966). There in noting the distinction between (1) recovery of "prelitigation investigation fees under the doctrine of *Kaufman v. Shoenberg*," *id.* at 713 (citation omitted), and (2) "a right to fees based on changes made at Chrysler *after the filing of the lawsuits* and before settlement which resulted in cognizable benefits proximately related to plaintiff's actions," *id.* (citations omitted) (emphasis added), the court explained that the plaintiff in that case could recover under either of these "legally cognizable and therefore compensable benefits to [the company]." *Id.*;[3] *see also* 2 ALI PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS, § 7.17 Illustration A (1994) (noting that a shareholder that makes a meritorious demand that causes corrective action by the board "should be entitled to an award of reasonable counsel fees." *Id.*)

Defendant seeks to distinguish *Kaufman* from this case. It asserts that a complaint must *be filed* before a benefit that flows from shareholder action can justify the award of a fee. In this respect, it relies on *Tandycrafts, Inc. v. Initio Partners*, Del.Supr., 562 A.2d 1162 (1989) where the Delaware Supreme Court stated, as part of the test for award of counsel fees, that "the claim [must be] meritorious when filed." *Id.* at 1167. In *Kaufman*, a complaint was filed, albeit the claim in question was dismissed. But here no complaint with respect to the claim presented to the board was ever filed (because of the board's action in conformity with the demand). Therefore, according to defendant, *Kaufman* is consistent with its reading of *Tandycrafts* but a judgment in this case in favor of plaintiff would not be.

Defendant's reliance on the phrase "when filed" reflects, in my view, stunted literalism. Lida offers no good argument grounded in

---

3. The court also identified a third basis for recovery for plaintiff in that action: settlement after plaintiff filed a lawsuit. *See Dann v. Chrysler Corp.*, 215 A.2d at 713.

theory or practice why *Kaufman* can sensibly be distinguished on this basis. In fact, the distinction offered misses the point of the Supreme Court's language and is not helpful. What is centrally important about the "meritorious when filed" qualification (which goes back to the Supreme Court's opinion in *Dann v. Chrysler, supra*) is the term "meritorious". The phrase is part of a test used to distinguish which claims can support a fee award when they are resolved in some way that confers a benefit on the corporation. The "when filed" restriction is intended, I suppose, to preclude fee awards in cases that do not have "merit" (in the terms of *Dann v. Chrysler*) when filed, even if discovery later shows the existence of a litigable and settleable case. Thus the "when filed" term means to discourage derivative suits brought as a "fishing expedition" by denying the award of fees in such cases, even if they are later settled on beneficial terms (as may happen either because one may stumble on an arguable wrong or because strike suits are sometimes rationally dealt with in that way). But this purpose has nothing at all to do with the question dealt with in *Kaufman* or in this case, both of which involve claims that, if meritorious, were meritorious *before* filed.

Defendant predicts that permitting plaintiffs a means to obtain attorneys' fees without the risk of Rule 11 sanctions will prejudice the general corporate welfare by exposing the corporation to a flood of demands based on frivolous and marginal claims. In evaluating this argument we should remind ourselves that we are here treating a class of cases in which a board of directors will, in its business judgment, have complied with a Rule 23.1 demand and thereby created a quantifiable financial benefit to the corporation. It is hard imagine frivolous demands as being a practical difficulty in this context. From the shareholders' perspective, the standard for recovery of fees in this context—plaintiff must present a meritorious claim causally related to a quantifiable financial benefit to the corporation—acts as a break on purely opportunistic behavior. Rational shareholders will weigh expected investigation costs against the possibility of recovery under the relevant legal standard. Moreover, in this context shareholders generally cannot parlay the nuisance value of a demand (considered apart from the nuisance value of litigation) into some beneficial settlement since the additional leverage is slight indeed.

*Kaufman v. Shoenberg* is, in my opinion, good law. It is dispositive of the question whether a shareholder can ever recover investigations costs, including reasonable attorney's fees, when the corporate board complies with a Rule 23.1 pre-suit demand and thus makes litigation unnecessary. I therefore am required to recognize a shareholders' right to recover reasonable investigation fees, including attorney's fees, in connection with the making of a demand pursuant to Rule 23.1 when the conditions set forth below are satisfied.

## IV.

The pending motion to dismiss thus come down to whether the complaint alleges facts which, if true, would permit the entry of an order requiring the corporation in effect to redistribute the cost of the benefit achieved without litigation among those who ultimately benefitted from it. The elements of such a reimbursement claim include at least (1) the presentation of a meritorious corporate claim by a shareholder, (2) the expenditure of funds or credit by the shareholder in investigating such claim, (3) action by the board that confers a quantifiable financial benefit on the corporation, (4) which action is causally related to the making of the shareholder demand. *See Kaufman v. Shoenberg*, Del. Ch., 92 A.2d 295 (1952); *cf. Tandycrafts, Inc. v. Initio Partners*, Del.Supr., 562 A.2d 1162, 1167 (1989) (establishing similar requirements for the award of attorneys fees in cases after plaintiff files a complaint).

The parties fundamentally disagree with respect to whether Mr. Bird made a demand upon the board concerning a meritorious legal claim. As explained below, the fact that the board took up a shareholders suggestion for a profitable change in the business would not, standing alone, justify a court concluding that a "meritorious" claim had been presented. Rather the demand must be related to

that contemplated by Rule 23.1 and must involve not simply a claim of business sub-optimization, but a "meritorious" claim of legal (including equitable) wrong. "A claim is meritorious within the meaning of the rule if ... [it states a non-dismissible claim under Rule 12(b)(5) and] the plaintiff possesses knowledge of provable facts which hold out some reasonable likelihood of ultimate success." *Chrysler Corp. v. Dann*, Del.Supr., 223 A.2d 384, 387 (1966).

Accepting all of the facts alleged as true, and inferring that which may fairly be inferred in plaintiff's favor, I conclude that the complaint does not state a claim upon which relief could be granted and thus is not "meritorious" under *Dann v. Chrysler Corp.* Recall the pleadings summarized at page 3 above. With respect to these facts, one may say that the leases in question were either valid market rate contracts when entered which thereafter grew "unreasonable" over time, or they were unbalanced exploitative leases that were "unreasonable" when entered and continued to be so in 1993, when plaintiff complained that they were currently "unreasonable". The complaint does not explicitly allege which of these conditions its pleader asserts to be the case. It is notable however that the complaint does not allege that the leases in question were unfair when entered. Even if it did so, the fact that plaintiff acquired his stock thereafter, at time when the leases were publicly and widely disclosed, would foreclose his maintenance of a derivative suit on such a claim. *See* 8 *Del.C.* § 327 (1991); *Newkirk v. W.J. Rainey, Inc.*, Del.Ch., 76 A.2d 121, 123 (1950). Since the complaint does allege that the leases pre-existed the 1992 Lida IPO and were

disclosed, it is clear that no public shareholder in any event would have standing to attack the leases on the ground that they were unfair when entered. *See, e.g., Goodman v. Futrovsky*, Del.Supr., 213 A.2d 899, 902 (1965), *cert. denied,* 383 U.S. 946, 86 S.Ct. 1197, 16 L.Ed.2d 209 (1966); *Schreiber v. Bryan*, Del.Ch., 396 A.2d 512, 517 (1978).[4] Moreover such a lease would not constitute a "continuing wrong" excepted from the statutory requirement that a derivative plaintiff own stock at the time of the wrong:

> Assuming that the individual defendants did wrong to the Corporation by entering into the contract it does not follow that they committed any wrong in carrying out the contract once it had been made. Indeed, had they not done so, the Corporation would presumably have been subject to liability for breach of contract.

*Elster v. American Airlines*, Del.Ch., 100 A.2d 219, 224 (1953) (citing *Levitan v. Stout*, 97 F.Supp. 105, 119 (W.D.Ky.1951))[5].

In alleging that rents were unreasonable in 1993, the complaint does implicitly state that by 1993 the rental payment under the leases was above a market rate. But that fact, while quite properly providing an occasion for a possible renegotiation of a lease, does not itself state a legal wrong. That is, a corporate officer or director who has made a contract with the corporation that is valid and binding at the time of contract is under no equitable duty to forego a contracted for return at a future time should changes in market conditions make his contract especially advantageous. Contracts involve the calculated assignment of risks, including where the contract is a lease,

---

4. The justification for such a rule would be that the market priced what the buyer was buying, warts and all. It would be neither fair nor efficient to permit later complaints about a disclosed wart.

5. Several Delaware cases illustrate this distinction between the consummation of the wrongful act and the delayed injurious effects of that act: *Elster,* 100 A.2d at 224 (in attack of stock plan, transaction considered complete with "the granting of options, not the exercise thereof."); *Schreiber v. Bryan,* Del.Ch., 396 A.2d 512, 516 (1978) ("what must be decided is when the specific acts of alleged wrongdoing occur, and not

when their effect is felt." *Id.); Brown v. Automated Marketing Systems,* Del.Ch., C.A. No. 6715, Brown, V.C., 1982 WL 8782 (March 22, 1982), Mem.Op. at 5–6 (holding that a shareholder does not have standing to challenge a merger approved by the board but not consummated before she acquired shares in the company). As I had previous occasion to note, "[t]he effects of an act can ripple through decades. But that fact does not mean that the act itself continues for Section 327 purposes so as to entitle later purchasers of the stock to sue on earlier wrongs." *Thorpe v. CERBCO, Inc.,* Del.Ch., C.A. No. 11713, Allen, C., 1993 WL 35967 (Jan. 26, 1993), Mem.Op. at 8.

the risk that real estate rents will rise or fall. To hold that corporate fiduciaries are disabled from realizing the benefits of market movements under contracts that were fair when entered would be essentially to make impractical even fully fair contracts between a fiduciary and the corporation.

Thus, in my opinion the complaint does not afford grounds to conclude that a meritorious legal claim was presented to the Lida board of directors. Rather it shows, at best, that Mr. Bird forcefully called to the board's attention the opportunity to achieve a business advantage by renegotiating long term leases, the rent term of which had grown "unreasonable." Plaintiff did stimulate the grasping of this advantage and in doing so conferred a financial benefit upon the corporation. But in my opinion he did not do so by asserting a "meritorious" legal claim.

But, if we appreciate the collective action problem of shareholders and the neat solution to the collective action problem that paying a bounty to successful shareholders lawyers represents, why should the law care whether Mr. Bird conferred a benefit through a meritorious legal claim or through stimulating the board simply to act in a way he correctly thought was advantageous? In either event the collective action problem of shareholders was overcome and a substantial financial benefit was realized by the corporate collectivity.

Quite evidently a strong policy argument in favor of cost sharing in this context could be made along that line. Against that argument stand certain legal institutional concerns. Courts do fashion cost sharing/fee shifting awards under established criteria. In this country that practice occurs not generally, but in a limited class of cases. To the extent courts extend fee shifting to instances in which a Rule 23.1 demand is satisfied and derivative litigation is thus avoided, a small step away from a practice that limits courts to fee shifting in litigation has been taken. That small step, closely tied by Rule 23.1 to the litigation setting, is well justified, as Chancellor Seitz held. But will not the same justification apply to a larger step which would see the court act generally to facilitate solutions to the shareholders collec-

tive action disabilities by ordering the payment of reasonable compensation *whenever a shareholder risks the expenditure of funds in monitoring corporate management and that expenditure results in board action that confers a substantial financial benefit on the corporation?* Perhaps so, but such an innovation is a step that would move courts from their traditional mission, including the settlement of disputed legal questions (and incidentally the awarding of fees for services rendered in litigation), to a rather different administrative task: the *ex post* pricing of "volunteer" informational services to corporations. While such a result would certainly be rational and quite possibly efficient, the step that it requires cannot sufficiently be supported by existing legal authorities to warrant judicial adoption at this time. Therefore, I am of the view that to gain reimbursement of investigation fees (including reasonable attorney's fees) following the making of a good faith shareholders demand pursuant to Rule 23.1, it is essential that the matter brought to the board's attention constitute a "meritorious" claim of legal wrong, and not simply an opportunity for more profitable operation of the firm. Since, as I read it, the complaint does not disclose the possibility that the matter presented to the Lida board by Mr. Bird did constitute a meritorious legal claim, I will grant the pending motion to dismiss.