# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| DAVID RAUL, as custodian for MALKA RAUL UTMA, NY, <br><br> Plaintiff, <br><br> v. <br><br> ASTORIA FINANCIAL CORPORATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) *Civil Action No. 9169-VCG* <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Date Submitted: May 8, 2014
Date Decided: June 20, 2014

Joel Friedlander and Jaclyn Levy, of FRIEDLANDER & GORRIS, P.A., Wilmington, Delaware; OF COUNSEL: Eduard Korsinsky and Douglas E. Julie, of LEVI & KORSINSKY, LLP, New York, New York, Attorneys for the Plaintiff.

Rolin P. Bissell and Emily V. Burton, of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Stewart D. Aaron and Robert C. Azarow, of ARNOLD & PORTER LLP, New York, New York, Attorneys for the Defendant.

GLASSCOCK, Vice Chancellor

A stockholder directs her attorney to investigate her corporation's activities, then sends the board of directors a demand letter stating that, in the opinion of the stockholder, the corporation is violating the law. The corporation takes action in response, arguably working a benefit on all stockholders. Is the stockholder entitled to have her attorneys' fees reimbursed under the corporate benefit doctrine?

Our law provides that if the actions of the board of directors were such that, at the time a demand was made, a suit based on those actions would have survived a motion to dismiss, and a material corporate benefit resulted, the attorneys' fees incurred by the stockholder may be recovered despite the fact that no suit was ever filed. If, on the other hand, the stockholder has simply done the company a good turn by bringing to the attention of the board an action that it ultimately decides to take, she is not entitled to coerced payment of her attorneys' fees by the stockholders at large. Finding that the demand at issue here falls into the latter category, I decline to shift fees onto the corporation and its stockholders.

## I. FACTS

### 1. The Parties

Astoria Financial Corporation ("Astoria," or the "Company") is a publicly-traded Delaware corporation engaged primarily in the operation of its wholly-owned subsidiary, Astoria Federal, whose business includes "attracting retail

2

deposits from the general public and businesses and investing those deposits, together with funds generated from operations, principal repayments on loans and securities and borrowings, primarily in one-to-four family, or residential, mortgage loans, multi-family mortgage loans, commercial real estate mortgage loans and mortgage-backed securities"[1]—in other words, banking.

The Plaintiff in this action is the custodian of Astoria common stockholder Malka Raul UTMA, NY.

## 2. Dodd-Frank and "Say On Pay"

In July 2010, "in response to the worst financial crisis since the Great Depression,"[2] Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"). Targeted at regulation of the financial services industry, ostensibly "in an attempt to restore responsibility and accountability in our financial system,"[3] Dodd-Frank imposed broad new regulation of approval and disclosure of corporate executive compensation decisions. Of importance in the present action, Section 951 of Dodd-Frank

---

[1] Compl. ¶ 7. Unless otherwise indicated, the facts cited herein are taken from the Plaintiff's Verified Complaint, as well as those documents incorporated by reference in the Complaint. *See LNR Partners, LLC v. C-III Asset Mgmt. LLC,* 2014 WL 1312033, at *9 (Del. Ch. Mar. 31, 2014) ("Generally, on a motion to dismiss under Rule 12(b)(6), the Court will consider only the complaint and the documents integral to or incorporated by reference into it.").
[2] Compl. ¶ 8.
[3] *Id.*

amended the Securities Exchange Act of 1934 to include Section 14A, governing

shareholder approval of executive compensation.  Section 14A provides, in part:

> (1) In general
> Not less frequently than once every 3 years, a proxy or consent or authorization for an annual or other meeting of the shareholders for which the proxy solicitation rules of the Commission require compensation disclosure shall include a separate resolution subject to shareholder vote to approve the compensation of executives, as disclosed pursuant to section 229.402 of title 17, Code of Federal Regulations, or any successor thereto.
>
> (2) Frequency of vote
> Not less frequently than once every 6 years, a proxy or consent or authorization for an annual or other meeting of the shareholders for which the proxy solicitation rules of the Commission require compensation disclosure shall include a separate resolution subject to shareholder vote to determine whether votes on the resolutions required under paragraph (1) will occur every 1, 2, or 3 years.[4]

In other words, the so-called "Say On Pay" provisions under Dodd-Frank require

companies to submit to their stockholders non-binding votes (1) to approve the

compensation arrangements of company executives (the "Say-On-Pay Vote"), and

(2) to determine whether future stockholder advisory votes on executive

compensation should occur every one, two, or three years (the "Frequency Vote").

In addition to requiring that a company hold a Say-On-Pay Vote and

Frequency Vote, Dodd-Frank requires companies to make certain disclosures with

respect to those votes once completed.  Two such disclosures are at issue in this

---

[4] 15 U.S.C. § 78n-1(a)(1)-(2).

litigation, including (1) a requirement that the company disclose in its Form 8-K the results of the Frequency Vote, as well as its decision, in light of that vote, on how frequently future Say-On-Pay Votes will be held, and (2) a requirement that the company disclose in its proxy statement whether, and if so, how, its board considered the results of the Say-On-Pay Vote when making compensation decisions.

Specifically, Form 8-K, Item 5.07(b) requires a company to "state the number of votes cast for each of 1 year, 2 years, and 3 years," while Item 5.07(d) provides that:

> No later than one hundred fifty calendar days after the end of the annual or other meeting of shareholders at which shareholders voted on the frequency of shareholder votes on the compensation of executives as required by section 14A(a)(2) of the Securities Exchange Act of 1934 . . . by amendment to the most recent Form 8-K filed pursuant to (b) of this Item, disclose the company's decision in light of such vote as to how frequently the company will include a shareholder vote on the compensation of executives in its proxy materials until the next required vote on the frequency of shareholder votes on the compensation of executives.[5]

Further, Regulation S-K, Item 402(b)(1)(vii) requires disclosure, in a company's proxy statement, of:

> Whether, and if so, how the registrant has considered the results of the most recent shareholder advisory vote on executive compensation required by section 14A of the Exchange Act . . . in determining compensation policies and decisions and, if so, how that consideration

---

[5] Form 8-K, Item 5.07(d).

has affected the registrant's executive compensation decisions and policies.[6]

The parties dispute whether Astoria's board satisfied those disclosure requirements following the Company's 2011 annual meeting.

### 3. Astoria's 2011 Annual Meeting

Less than a year after the July 2010 enactment of Dodd-Frank, on May 18, 2011, Astoria held an annual meeting. In connection with that meeting, on April 11, 2011, the Astoria board submitted a proxy statement (the "2011 Proxy Statement") informing stockholders of the Company's intention to hold the Company's first Say-On-Pay Vote and Frequency Vote. The 2011 Proxy Statement described the executive compensation packages for which the Company sought approval, and included the Astoria board's recommendations that the stockholders (1) vote to approve the executive compensation packages, and (2) vote to hold future Say-On-Pay Votes annually.

At the May 18, 2011 annual meeting, approximately 65% of stockholders voted to approve Astoria's executive compensation, and roughly 74% of stockholders voted to hold future Say-On-Pay Votes annually, in both cases as the board had recommended. After receiving the results of those votes, Astoria filed a Form 8-K. Pursuant to Item 5.07, the Company disclosed:

---

[6] 17 C.F.R. § 229.402(b)(1)(vii).

The non-binding vote to determine the frequency of future shareholder advisory votes to approve the compensation of the Company's named executive officers is based on the highest number of votes cast by shareholders represented in person or by proxy and entitled to vote. *Based on the vote indicated below, the results of the future advisory shareholder votes to approve the compensation of the Company's named executives is every year.*[7]

Despite the Defendant's contention that the italicized language above sufficiently informed Astoria's stockholders of the results of the Frequency Vote, according to the Plaintiff, the language cited above was insufficient to meet the disclosure requirements articulated in Item 5.07.

## 4. Astoria's 2012 Annual Meeting

Several months later, on April 6, 2012, as its next annual meeting approached, Astoria disseminated a second proxy statement (the "2012 Proxy Statement") to its stockholders. As in 2011, the 2012 Proxy Statement sought the Astoria stockholders' non-binding approval of Astoria's executive compensation pursuant to a new 2012 Say-On-Pay Vote. In addition, as in the preceding year, the 2012 Proxy Statement described the compensation packages at issue, as well as the board's recommendation that the stockholders approve Astoria's executive compensation arrangements. The Plaintiff contends, however, that the 2012 Proxy Statement did not disclose whether, and if so, how, the Astoria board considered

---

[7] Mem. of Law in Supp. of Def.'s Mot. to Dismiss at 17, Chart 1 (emphasis added).

7

the results of the prior 2011 Say-On-Pay Vote in making its executive compensation decisions.

## 5. The Plaintiff's Demand

Ten days after Astoria disseminated its 2012 Proxy Statement, on April 16, 2012, the Plaintiff sent a demand letter (the "Demand") to the Astoria board. In that Demand, the Plaintiff asserted that, "[i]n violation of Securities and Exchange Commission ('SEC') regulation disclosure standards and the Astoria Board's duty of candor," the Astoria board "concealed material and required information concerning the Company's executive compensation policies and practices in the 2012 Proxy Statement"[8] by failing to disclose "whether, and if so, how, the Astoria Board considered the results of the 2011 say-on-pay vote."[9] Further, the Plaintiff explained that, "[i]n violation of SEC rules, the Company has failed to disclose how frequently it has decided to hold future say-on-pay votes."[10] In his Demand, the Plaintiff summarized his position as follows:

> The Astoria Board owes Astoria a fiduciary duty of loyalty—the highest duty known to the law. Each of the Astoria Board members has a fiduciary duty to ensure that Astoria disseminated accurate, truthful, and complete information to its shareholders. The Astoria Board participated in or had actual or constructive knowledge of the inadequate disclosures made in the 2012 Proxy Statement . . . . Based

---

[8] *Id.* Ex. 5 at 2.
[9] *Id.* at 1.
[10] *Id.* at 2.

8

on the foregoing, the Astoria Board breached its fiduciary duty of loyalty (and candor and good faith).[11]

Accordingly, the Plaintiff demanded that the board (1) issue corrective disclosures, (2) adopt stronger protocols regarding disclosures, and (3) amend the Company's Compensation Committee Charter to require that Committee to consider the results of future Say-On-Pay Votes when making executive compensation decisions. The Demand did *not* request that the Company conduct any litigation.[12]

Astoria responded to the Plaintiff's Demand by letter dated May 3, 2012. That response explained:

> Please be assured that we regularly evaluate the adequacy of our compensation-related disclosures and related policies and procedures. We recognize that recent changes to certain disclosure requirements regarding executive compensation have created some confusion with respect to compliance with both the letter and the spirit of these requirements. Many public companies have worked hard to comply with these new rules, and have not all taken the same path. In recognition of this and as a result of our ongoing efforts to evaluate and improve our public disclosures when appropriate, we would like to advise you of the following recent actions that have been taken by the Company:
>
> > 1. On April 20, 2012, the Company filed with the SEC, pursuant to Item 5.07(d), an amendment on Form 8-K/A . . . . This amendment discloses that, in light of the shareholder advisory vote at the 2011 Annual Meeting on the frequency of

---

[11] *Id.* at 3.

[12] *See id.* (requesting only that Company take certain remedial measures, but noting that "[i]f you fail to respond or contact the undersigned by May 4, 2012, we will be forced to assume that you have decided not to pursue any investigation, litigation, or remedial steps described above and we will be forced to take such action as we deem in the best interest of the Company and its shareholders, including but not limited to the institution of an action in a court of law").

shareholder votes on approval of the compensation of the Company's named executive officers . . . the Company intends to hold a say-on-pay vote every year . . . .

2.  On April 25, 2012, the Company mailed a letter to its shareholders, which, among other things, clarifies whether and how the Company considered the results of the shareholder advisory vote on the approval of the compensation . . . .

3.  In view of the delayed submission of the Form 8-K Amendment, the Company recently authorized its Director of Investor Relations to undertake a complete review of the Current Report requirements under the Exchange Act as they currently exist and will be implementing an education program that will allow for timely identification and reporting of those items that are required to be reported by the Company under the Exchange Act. . . .[13]

The Company's May 3 letter also assured the Plaintiff that:

At the next regular meeting of the Company's Compensation Committee, the Compensation Committee will evaluate your request that the Company include a provision in its Compensation Committee Charter requiring the Compensation Committee to consider the results of future say-on-pay votes in its executive compensation decisions and practices and that such provision should require the Compensation Committee to reach out to certain shareholders that voted against the Company's compensation to determine the reasons for such opposition.[14]

In fact, on September 19, 2012, Astoria's Compensation Committee did amend its Charter as requested by the Plaintiff.[15]

---

[13] Mem. of Law in Supp. of Def.'s Mot. to Dismiss Ex. 8 at 1-2.

[14] *Id.* at 2.

[15] I note, however, that although the Plaintiff contends that this amendment was a benefit conferred on the corporation, the adoption of such an amendment bears no relation to the

10

## 6. This Litigation

Following a denied request that Astoria pay attorneys' fees in connection with investigating and mailing his April 16, 2012 Demand, the Plaintiff filed his Complaint in this action on December 17, 2013, "seeking an equitable assessment of attorneys' fees,"[16] and alleging that the Plaintiff's efforts to remedy the disclosure violations identified in his Demand conferred upon Astoria a benefit justifying an award of fees. On February 11, 2014, Astoria moved to dismiss the Complaint. I heard oral argument on that Motion on May 6, 2014.

In support of its Motion to Dismiss, Astoria contends that the Plaintiff is not entitled to an award of attorneys' fees under the corporate benefit doctrine, as the Plaintiff never (1) presented a meritorious claim to the Astoria board or (2) conferred any benefit on the corporation. In response, the Plaintiff contends that under the corporate benefit doctrine, the Plaintiff is entitled to recover attorneys' fees for the successful resolution of his Demand, as it presented a meritorious claim for breach of fiduciary duty, and conferred a benefit on the Astoria stockholders by bringing the Company into compliance with applicable law.

---

fiduciary duty claims that the Plaintiff asserts could have been brought here. Those claims are addressed in detail below.

[16] Compl. ¶ 1.

## II. STANDARD OF REVIEW

Under Court of Chancery Rule 12(b)(6), this Court must deny a motion to dismiss for failure to state a claim upon which relief may be granted where "the well-pled factual allegations of the complaint would entitle the plaintiff to relief under a reasonably conceivable set of circumstances . . . ."[17] In considering such a motion, I must "accept the well-pleaded allegations of fact in the complaint as true and draw all reasonable inferences that logically flow from those allegations in the plaintiff's favor."[18] I am not required, however, to "blindly accept conclusory allegations unsupported by specific facts," or to "draw unreasonable inferences in the plaintiffs' favor."[19]

## III. ANALYSIS

The Plaintiff here seeks recovery of attorneys' fees and costs in connection with his pre-suit investigation and Demand. Under the corporate benefit doctrine as it applies to moot claims, a plaintiff may receive attorneys' fees where "(i) the [underlying cause of action] was meritorious when filed; (ii) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (iii) the resulting corporate benefit was causally related to the

---

[17] *Sustainable Energy Generation Grp., LLC v. Photon Energy Projects B.V.*, 2014 WL 2433096, at *12 (Del. Ch. May 30, 2014).

[18] *In re Trados Inc. S'holder Litig.*, 2009 WL 2225958, at *4 (Del. Ch. July 24, 2009).

[19] *Gantler v. Stephens*, 965 A.2d 695, 704 (Del. 2009).

lawsuit."[20]  Our Courts have understood the requirement that an underlying claim be "meritorious *when filed*" to mean only that when presented to the board, the underlying cause of action asserted by the plaintiff was meritorious; a plaintiff need not have filed an underlying action in the Court of Chancery to recover fees.[21]

The corporate benefit doctrine, an exception to the American Rule under which each side bears its costs, is premised on the idea that, "where a litigant has conferred a common monetary benefit upon an identifiable class of stockholders, all of the stockholders should contribute to the costs of achieving that benefit."[22] Where applicable, the corporate benefit doctrine promotes private enforcement of fiduciary breaches; through this fee-shifting mechanism, our legal system incentivizes private actors to police corporate misconduct where, in the absence of such a mechanism, "there [would] be less shareholder monitoring expenditures than would be optimum [for] the shareholders as a collectivity."[23]  But, "[o]f course, [private enforcement] itself suffers from deep agency problems,"[24] and the requirement that there exist a *meritorious claim* when filed, and not merely a corporate benefit, operates to further protect stockholder interest under our

---

[20] *United Vanguard Fund, Inc. v. TakeCare, Inc*., 727 A.2d 844, 850 (Del. Ch. 1998).
[21] *Bird v. Lida, Inc.*, 681 A.2d 399, 405 (Del. Ch. 1996).
[22] *United Vanguard Fund, Inc.*, 727 A.2d at 850.
[23] *Bird*, 681 A.2d at 403.
[24] *Id.*

corporate model, in which the board, not the stockholders, are responsible for managing the corporation.[25]

Under this model, our Courts adjudicate corporate wrongdoing, not directors' exercise of their discretion. The availability of cost-shifting for a corporate benefit conferred, unrelated to a meritorious claim, was closely considered nearly twenty years ago by then-Chancellor Allen in *Bird v. Lida.* That scholarly and thoughtful analysis cannot be improved upon here. I add only that where a volunteer stockholder (or non-stockholder, for that matter) notifies directors, not that they are in breach of their duties, but simply that they have missed a corporate opportunity or should avoid a corporate loss, the consideration of such a notification is a board, not a Court, affair. If the board takes action resulting in a corporate benefit, such that it believes the stockholders at large would have consented to paying the volunteer for his investigation *ex ante*, the directors may have an incentive to reward the volunteer *ex post*, and may thereby promote not only equity but efficient levels of volunteer-monitoring in the future, as the directors find appropriate. It is only where a benefit results from a demand to address corporate wrongdoing under Rule 23.1, however, that it is appropriate for *the Court* to intervene in the equitable distribution of the costs among all

---

[25] *See Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 879 (Del. 1980) ("But this Court has been concerned with discouraging baseless litigation and has adhered to the merit requirement.") (citation omitted).

14

stockholders, consistent with the Court's role as an adjudicative body. Consider a stockholder who investigates and provides notice of leaking drums of chemicals stored at a corporate site. Assume that the circumstances are such that no actionable breach of duty has taken place by a corporate director or officer in connection with the leaks. The stockholder through his attorney files a demand with the board that action be taken to correct the situation, after which the corporation investigates and rectifies the leak, saving the corporation loss of product and potential legal liability. The board may decide to reward the stockholder, in its discretion. But the stockholder would not be able to cause the Court to force the corporation to reimburse his costs, legal or otherwise, because he was a mere volunteer, presumably acting in his own interest. The sharing of that stockholder's costs—as well as the resulting benefits—among the stockholders at large may appear efficient, or "fair," but this Court is not a general enforcer of either of those qualities outside the context of litigation within its purview. The costs of litigation may equitably be distributed by the Court, consistent with its jurisdiction; and equitable distribution of legal costs where a meritorious action is mooted before litigation commences is but a corollary of the equitable distribution of litigation expenses. But a general allocation of the costs incurred by good Samaritans untethered to a meritorious (actual or potential) cause of action would

15

drastically expand the jurisdiction of this Court, and usurp a core function of the board of directors.

In that light, the stockholder in the hypothetical above would no more be entitled to compel payment of his costs than would a stockholder/treasure-hunter whose research enabled her to reveal to the board that a treasure trove was buried on the grounds of corporate headquarters. To hold otherwise would be to license each stockholder to decide how much oversight must be devoted to any given corporate activity, and, when a benefit results, shift the cost to the corporation. But, so long as the board acts consistent with its fiduciary duties,[26] what resources to devote to oversight—whether for the inspection of storage containers or the search for buried treasure—is a core board function, and not a stockholder function. Only where the stockholder has acted on behalf of the corporation because those whose duty it is to act, the directors, have breached their fiduciary duties, will the stockholder be entitled to compel payment of fees and costs by the stockholders generally, via the equitable power of this Court.[27]

---

[26] *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 970 (Del. Ch. 1996).

[27] Of course, failure to reward a monitoring volunteer who does the corporation a good turn may result in a level of volunteer monitoring that is inefficiently low. It is not clear, however, that coerced cost-shifting in such a situation would result in optimal monitoring, either. In any event, the efficiency argument was disposed of, persuasively in my view, in *Bird*:

> Quite evidently a strong policy argument in favor of cost sharing in this context could be made along that line. Against that argument stand certain legal institutional concerns. Courts do fashion cost sharing/fee shifting awards under established criteria. In this country that practice occurs not generally, but in a

The state of our law remains as set forth by Chancellor Allen in *Bird*: the "presentation of a meritorious corporate claim by a shareholder" is a requisite element of a claim for reimbursement under the corporate benefit doctrine.[28] In that regard, under our case law, "[a] claim is meritorious within the meaning of the rule if it can withstand a motion to dismiss on the pleadings if, at the same time, the plaintiff possesses knowledge of provable facts which hold out some reasonable likelihood of ultimate success."[29]

---

limited class of cases. To the extent courts extend fee shifting to instances in which a Rule 23.1 demand is satisfied and derivative litigation is thus avoided, a small step away from a practice that limits courts to fee shifting in litigation has been taken. That small step, closely tied by Rule 23.1 to the litigation setting, is well justified, as Chancellor Seitz held [in *Kaufman v. Shoenberg*, 91 A.2d 786 (Del. Ch. 1952)]. But will not the same justification apply to a larger step which would see the court act generally to facilitate solutions to the shareholders collective action disabilities by ordering the payment of reasonable compensation whenever a shareholder risks the expenditure of funds in monitoring corporate management and that expenditure results in board action that confers a substantial financial benefit on the corporation? Perhaps so, but such an innovation is a step that would move courts from their traditional mission, including the settlement of disputed legal questions (and incidentally the awarding of fees for services rendered in litigation), to a rather different administrative task: the *ex post* pricing of "volunteer" informational services to corporations. While such a result would certainly be rational and quite possibly efficient, the step that it requires cannot sufficiently be supported by existing legal authorities to warrant judicial adoption at this time. Therefore, I am of the view that to gain reimbursement of investigation fees (including reasonable attorney's fees) following the making of a good faith shareholders demand pursuant to Rule 23.1, it is essential that the matter brought to the board's attention constitute a "meritorious" claim of legal wrong, and not simply an opportunity for more profitable operation of the firm.

*Bird*, 681 A.2d at 407.

[28] *Id.* at 405.

[29] *In re Primedia, Inc. S'holders Litig.*, 67 A.3d 455, 478 (Del. Ch. 2013) (citing *Chrysler Corp. v. Dann*, 223 A.2d 384, 387 (Del. 1966)).

The Defendant here contends that the Plaintiff has failed to identify a meritorious underlying cause of action justifying a fee award under the corporate benefit doctrine. While the Plaintiff generally asserts that the Astoria board breached its fiduciary duties by failing to comply with the disclosure requirements under Dodd-Frank, he does not fully articulate the legal bases underlying any fiduciary breach. I assume, for purposes of this Motion to Dismiss only, that a corporate benefit has resulted from the actions of the Plaintiff.[30] In the remainder of this Memorandum Opinion, I consider whether the underlying allegations contained in the Plaintiff's Demand and Verified Complaint state a meritorious cause of action for breach of the duty of candor, loyalty, or care. For the reasons that follow, I find that the Plaintiff failed to present to the Astoria board any meritorious cause of action for breach of fiduciary duty, and accordingly grant the Defendant's Motion to Dismiss.

### 1. Duty of Candor

Under Delaware law, directors owe a fiduciary duty to "fully and accurately disclose all material information to stockholders when seeking stockholder

---

[30] Because I find that the Plaintiff has failed to assert a meritorious underlying claim, I need not reach the question of whether in fact the Plaintiff's actions conferred a benefit on the Astoria stockholders.

action,"[31] which duty arises out of a director's duties of both loyalty and care.[32] As under the federal securities laws, information is material if, in the context of the "total mix" of information, a reasonable stockholder would consider it important in deciding how to act.[33] To survive a motion to dismiss, "a pleader must allege that facts are missing from the statement, identify those facts, state why they meet the materiality standard and how the omission caused injury."[34]

As noted above, the Plaintiff fails in briefing to articulate the basis of the underlying fiduciary duty claim asserted in his Demand, nor does his Complaint identify such a basis.[35] The Plaintiff's Demand itself, however, asserted that, "[i]n violation of [SEC] regulation disclosure standards and the Astoria Board's *duty of*

---

[31] *Ehlen v. Conceptus, Inc.*, 2013 WL 2285577, at *2 (Del. Ch. May 24, 2013); *see also In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1127 (Del. Ch. 2011) ("[I]f a complaint does not identify a material misstatement or omission, it cannot survive a motion to dismiss and therefore is not meritorious.").

[32] *See Orman v. Cullman*, 794 A.2d 5, 41 (Del. Ch. 2002) ("The fiduciary duty to disclose material facts does not solely implicate the duty of loyalty, a breach of which results in liability that cannot be avoided by an exculpatory provision. Rather, '[t]he duty of directors to observe proper disclosure requirements derives from the combination of the fiduciary duties of care, loyalty and good faith.'").

[33] *Ehlen*, 2013 WL 2285577, at *2.

[34] *Malpiede v. Townson*, 780 A.2d 1075, 1087 (Del. 2001) (quoting *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 141 (Del. 1997).

[35] The Plaintiff's Complaint refers only twice to the Astoria board's fiduciary duties. *See* Compl. ¶ 16 ("The Demand Letter identified the disclosure deficiencies described above and alleged that the Board violated the federal securities laws and breached its fiduciary duty of candor by failing to disclose the required and material information detailed above."); *id.* at ¶ 24 ("Plaintiff's Demand raised meritorious legal claims with respect to the Board's breaches of fiduciary duties and violations of federal securities laws by failing to disclose material and required information following their 2011 say-on-pay vote.").

19

*candor*,"[36] the Astoria board failed to satisfy the disclosure requirements contained in Item 5.07(d) of Form 8-K as well as 17 C.F.R. § 229.402(b)(1)(vii).[37] In other words, the Plaintiff challenged the board's failure to disclose (1) how the board considered the results of the 2011 Frequency Vote, and (2) whether and how the board considered the results of the 2011 Say-On-Pay Vote. I do not accept, however, that the underlying allegations in the Plaintiff's Demand presented a meritorious claim for breach of the duty of candor under Delaware law.

The Plaintiff has identified two purportedly actionable omissions, neither of which, in my view, rise to a level of a breach of the duty of candor. First, the Plaintiff suggests that a failure to disclose to the Astoria stockholders how the board considered the results of the 2011 Frequency Vote constituted a breach of the duty of candor. However, it is unclear to me how that information would be material to a reasonable stockholder given that the board (1) recommended in the 2011 Proxy Statement that stockholders vote to hold annual Say-On-Pay Votes; (2) disclosed in a subsequent 8-K that "[b]ased on the vote indicated below, the results of the future advisory shareholder votes to approve the compensation of the

---

[36] Mem. of Law in Supp. of Def.'s Mot. to Dismiss Ex. 5 at 2 (emphasis added).

[37] I note that although the Plaintiff contended in his Demand that the failure to omit certain information violated disclosure requirements under Dodd Frank, Dodd Frank itself explicitly provides that the Act does not "create or imply any change to the fiduciary duties" of, or "create or imply any additional fiduciary duties" for, directors. 15 U.S.C. § 78n-1(c)(2)-(3).

Company's named executives is every year;"[38] and (3) disclosed in the 2012 Proxy Statement its intent to hold a second Say-On-Pay Vote. With that information available to the Astoria stockholders, I find that the board did not omit material information in its initial 8-K by failing to explicitly inform the stockholders that the results of the 2011 Frequency Vote showed that the stockholders had voted to hold future Say-On-Pay Votes annually, as the board had recommended, and that the board had accepted those results.

Similarly, whether and how the board considered the results of the 2011 Say-On-Pay Vote cannot be material as a matter of Delaware law. The Plaintiff can point to no authority indicating that, as a matter of Delaware law, every consideration underlying a board's approval of executive compensation must be disclosed. The supplemental disclosure made after the Demand—which the Plaintiff points to as a corporate benefit—itself provided only the boilerplate information that the board "was aware of a variety of factors, including the outcome of the advisory vote, when it authorized the changes, but no single factor was determinative."[39] Known to the stockholders, before the Plaintiff sent his Demand and the board supplemented the 2012 Proxy Statement, was that (1) the board recommended certain compensation packages in 2011; (2) the board planned

---

[38] Mem. of Law in Supp. of Def.'s Mot. to Dismiss at 17, Chart 1.
[39] *Id.* at 18, Chart 2.

to "take into account the outcome of the vote when considering future executive compensation;"[40] (3) a majority of the stockholders voted in favor of the board's recommendation;[41] and (4) the board implemented those compensation decisions it had recommended and the stockholders had blessed.[42]  The proxy supplement, though in compliance with Dodd-Frank, is devoid of further content, and the failure to include the additional disclosures in the Company's 2012 Proxy Statement does not, in my view, constitute a material omission sufficient to demonstrate a breach of the duty of candor.

## 2. *Caremark* Claim

As the underlying facts of the Plaintiff's Demand and Complaint do not state a claim for breach of the duty of candor, neither do they state a claim for breach of the duty of good faith under the standard articulated in *Caremark*.  As that case explained, "a director's obligation includes a duty to attempt in good faith to assure that a corporate information and reporting system, which the board concludes is adequate, exists, and that failure to do so under some circumstances may, in theory at least, render a director liable for losses caused by non-compliance with applicable legal standards."[43]  However, "only a sustained or systematic failure of

---

[40] *Id.*
[41] *Id.* Ex. 2 at 2.
[42] *Id.* Ex. 4 at 34, 39.
[43] *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 970 (Del. Ch. 1996).

the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability."[44] As the Plaintiff's Complaint concedes, the Company's May 3, 2012 response to the Plaintiff's Demand indicated that Astoria "regularly evaluate[s] the adequacy of [its] compensation-related disclosures and related policies and procedures."[45] Further, Plaintiff's counsel agreed at oral argument that he "wouldn't view this through a *Caremark* lens."[46] As neither the Plaintiff's Complaint nor his Demand provides any basis to infer that the Astoria board utterly failed to institute procedures aimed at ensuring the Company satisfies applicable disclosure laws, I conclude that the Plaintiff's Demand failed to present to the Company a meritorious *Caremark* claim.

### 3. Good Faith

The underlying facts of the Plaintiff's Demand and Complaint also fail to present a meritorious claim for breach of the duty of good faith independent of a *Caremark* claim. In addition to situations "where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties," a fiduciary may also act in bad faith by "intentionally break[ing] the law," or by "intentionally act[ing] with a purpose other than that of advancing the

---

[44] *Id.* at 971.
[45] Mem. of Law in Supp. of Def.'s Mot. to Dismiss Ex. 8 at 1.
[46] Oral Arg. Tr. 24:14-15.

23

best interests of the corporation . . . ."[47] Neither the Plaintiff's Demand nor his Complaint provides the Court any basis to infer that, assuming the Astoria board did in fact violate disclosure requirements under Dodd-Frank, it did so intentionally.[48] Rather, at oral argument, Plaintiff's counsel suggested that a meritorious underlying claim for breach of the duty of good faith may have existed because, had the board chosen to disregard the Plaintiff's Demand, the Plaintiff then could "have filed a complaint that said that by refusing the demand, the board now knew the violation of the federal securities law that existed and refused to remedy it. That is a decision to continue to violate the law."[49] Of course, the corporate benefit doctrine requires the actual existence of a meritorious claim at the time a cause of action is filed or presented to the board—not the theoretical existence of a meritorious claim under circumstances that never came to fruition—and that argument accordingly must fail. As a result, I find that the Plaintiff presented no meritorious underlying claim for breach of the duty of good faith.

---

[47] *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *13 (Del. Ch. Oct. 12, 2011).

[48] In briefing, the Plaintiff contends that "[d]irectors and officers have a fiduciary duty to ensure that a company is in compliance with applicable laws and regulations." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss at 9. In support of that contention, the Plaintiff cites case law explaining that "[u]nder Delaware law, a fiduciary may not choose to manage an entity in an illegal fashion[.]" *Id.* (citing *Metro Commc'n Corp. BVI v. Advanced Mobilcomm Techs., Inc.*, 854 A.2d 121, 131 (Del. Ch. 2004)). However, as indicated above, neither the Plaintiff's Demand nor his Complaint indicates that the board intentionally "chose" to violate known law.

[49] Oral Arg. Tr. 25:1-5.

## 4. Duty of Care

Finally, I find that the Plaintiff's Demand and Complaint do not allege facts sufficient to state a meritorious claim for breach of the duty of care. As an initial matter, Astoria's Certificate of Incorporation contains a provision adopted pursuant to 8 *Del. C.* § 102(b)(7) exculpating directors for breaches of the duty of care.[50] As a result, only a claim for injunctive relief, and not money damages, could theoretically state a claim for breach of the duty of care that could survive a motion to dismiss. Such a claim would be problematic, as it is unclear what injunctive relief would be available to the Plaintiff in this Court,[51] or how the Plaintiff could demonstrate irreparable harm.

At any rate, even if Astoria's 102(b)(7) provision did not prevent the Plaintiff from pursuing a duty of care claim against the Astoria board, his Demand and Complaint contain no allegations indicating that the Astoria directors acted with gross negligence—reckless indifference to their responsibilities—sufficient to

---

[50] Certificate of Incorporation § 11.

[51] The Plaintiff suggests that he could have brought a non-exculpated claim for (1) a declaratory judgment that the Company failed to comply with federal disclosure laws, and (2) injunctive relief compelling the Company to comply with applicable law. This Court is not typically in the business of issuing injunctions requiring defendants to comply with the law, however, as "it is not at all clear what purpose would be served by enjoining [a defendant] from violating duly enacted statutes that it is already duty-bound to honor." *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 536 (Del. Ch. 2005).

constitute a breach of the duty of care.[52] To the contrary, the Plaintiff has not suggested that any action of the board amounted to gross negligence, nor did the Plaintiff identify a breach of the duty of care in his Demand, which noted only that "[b]ased on the foregoing, the Astoria Board breached its fiduciary duty of loyalty (and candor and good faith)."[53] As a result, I conclude that the Plaintiff failed to assert a meritorious claim for breach of the duty of care in his Demand or Complaint.

## IV. CONCLUSION

For the reasons explained above, I conclude that the Complaint fails to state a claim for entitlement to attorneys' fees under the corporate benefit doctrine. Evaluating the allegations of the Complaint and the Plaintiff's Demand, the Plaintiff has presented no underlying meritorious claim for breach of fiduciary duty. Accordingly, the Defendants' Motion to Dismiss is granted. An appropriate Order is attached.

---

[52] *See Malpiede v. Townson*, 780 A.2d 1075, 1098 n.77 (Del. 2001) ("In the corporate context, [director] liability for breaching the duty of care is predicated upon concepts of gross negligence.") (internal quotation marks omitted); *McPadden v. Sidhu*, 964 A.2d 1262, 1273-74 (Del. Ch. 2008) ("Gross negligence . . . is exculpated because such conduct breaches the duty of care. . . . Delaware's current understanding of gross negligence is conduct that constitutes reckless indifference or actions that are without the bounds of reason.").

[53] Mem. of Law in Supp. of Def.'s Mot. to Dismiss Ex. 5 at 2.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| DAVID RAUL, as custodian for ) | |
| MALKA RAUL UTMA, NY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | *Civil Action No. 9169-VCG* |
| ) | |
| ASTORIA FINANCIAL ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

AND NOW, this 20th day of June, 2014,

For the reasons stated in my Memorandum Opinion of June 20, 2014, the Defendant's Motion to Dismiss is GRANTED, and this action is DISMISSED.

SO ORDERED:

/s/ Sam Glasscock III
Vice Chancellor